Filed 4/9/14

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| PAUL THORYK, | D062680 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. Nos. 37-2008-00093080-CU-NP-CTL; 37-2009-00098662-CU-NP-CTL) |
| SAN DIEGO GAS & ELECTRIC COMPANY et al. | |
| Defendants, | |
| HIGHLAND VALLEY INVESTORS, LLC, | |
| Intervener and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E. L. Strauss, Judge.  Reversed with directions to enter a different judgment denying the lien application.

Chapin Fitzgerald, Douglas J. Brown and Edward D. Chapin for Plaintiff and Appellant.

Freeland McKinley & McKinley, Steven A. McKinley and Karen G. McKinley for Intervener and Respondent.

This intervention action arises out of a former debtor-creditor relationship concerning real property that was damaged by the San Diego County wildfires of 2007. The main action is a master complaint by damaged property owners, including a defaulting borrower, plaintiff, defendant-in-intervention and appellant Paul Thoryk (Appellant), who owned the property at the time of the fires. A year later, plaintiff-in-intervention and respondent Highland Valley Investors, LLC (Highland) nonjudicially foreclosed under the junior trust deed it held and took the real property security, subject to a senior lien held by a party that is no longer involved in this action.[1]

In the main action, Appellant sued the wildfire defendants, San Diego Gas & Electric Company; Cox, Inc.; and Sempra Energy (the third party tortfeasors), for damages for inverse condemnation, negligence, trespass, nuisance, and violation of the Public Utilities Code. Highland also filed its complaint in intervention against those same defendants-in-intervention. (*Cornelison v. Kornbluth* (1975) 15 Cal.3d 590, 598, fn. 3, 599, 604, fn. 9 (*Cornelison*) ["actions by mortgagees against nonpossessing third parties for tortious impairment of security are not affected by the antideficiency legislation"].) Also, Highland sued Appellant, seeking declaratory relief that it is entitled to a judicially imposed lien under the terms of its deed of trust and related note, and/or under the doctrine of equitable conversion, upon any recovery that Appellant might eventually obtain from the third party tortfeasors.

---

[1]     After foreclosing under the power of sale as junior lienholder on the real property security, Highland held the property for two years after the fires, then lost it when the senior lienholder, PFI Realty III, LP (PFI), foreclosed. We describe PFI's limited participation in this litigation, *post*.

To evaluate the granting of declaratory relief in favor of Highland, we must interpret the antideficiency body of law in terms of any applicability of well-established exceptions to antideficiency protections and the one action rule. (Code Civ. Proc., §§ 580d, 726; all further statutory references are to this code unless noted.) Specifically, Appellant argues the trial court erred in determining that there was no bar in the antideficiency statutes for Highland presently to obtain a lien on Appellant's future property damage recovery under the master complaint, for any damage inflicted on his real property in the nature of inverse condemnation, etc. In its ruling, the trial court set the amount secured by Highland's lien at the unpaid principal amount of Appellant's mortgage debt ($837,385.29), along with postforeclosure interest and prejudgment interest, plus attorney fees and costs pursuant to the terms of the note.

Case law establishes various exceptions to statutory antideficiency protections for a borrower, such as the "mixed collateral" rule. Where there are liens established upon both personal and real property in the subject transaction, a foreclosing lienholder using the power of sale may continue to pursue remedies against the former property owner/borrower. (*Hatch v. Security-First National Bank* (1942) 19 Cal.2d 254, 261 (*Hatch*) [no violation of section 580a where creditor does not seek a personal judgment for the unpaid balance of a loan, but instead seeks to enforce additional security secondarily liable for the principal loan, such as selling a pledge or other trust deeds given as additional security for the otherwise secured loan]; *Mortgage Guarantee Co. v. Sampsell* (1942) 51 Cal.App.2d 180, 186 (*Sampsell*) [sale of real property under the power of sale in the deed of trust does not wipe out the indebtedness and the creditor may

proceed against "any other security"]; see 4 Miller & Starr, Cal. Real Estate (3d ed. 2011) § 10:218, pp. 10-803 to 10-806 (Miller & Starr).)

Highland claims the trial court correctly recognized that the debt represented by Appellant's default on the promissory note, which was secured by the nonjudicially foreclosed trust deed, survived the foreclosure, and that security other than the lost land was expressly or impliedly created in the trust deed and may be pursued (e.g., money related to the real property or substitutes for the land, such as inverse condemnation awards). (See *Los Angeles Trust & Savings Bank v. Bortenstein* (1920) 47 Cal.App. 421, 423-424 (*Bortenstein*) [a mortgagee had the right in a judicial foreclosure action, over objections of the mortgagor, to obtain a lien for an amount representing its security interest, upon an award of eminent domain damages that the mortgagor had recovered from a municipality in another action, for partial destruction of the mortgaged property; equity required allocation and no impermissible deficiency judgment resulted].) The trial court imposed a lien against Appellant's future recovery against the third party tortfeasors, to permit Highland to recover the interest and attorney fees that were provided for in the promissory note, as well as obtaining the unpaid balance on the note.

We agree with Appellant that Highland, the junior lienholder foreclosing under power of sale, has failed to show the applicable exceptions cover its situation, either under the terms of the note or through the equitable conversion doctrine, to allow it to obtain a lien against Appellant. The lien ruling on the deed of trust was the functional equivalent of a deficiency money judgment. It does not properly account for any ultimate allocation that may become necessary of any recovery from the third party tortfeasors, for

4

property damage for the respective ownership periods, or for Highland's impairment of security. (See *Birman v. Loeb* (1998) 64 Cal.App.4th 502, 511 (*Birman*).) We reverse the declaratory relief judgment in favor of Highland, with directions to enter a different judgment denying the lien application.

FACTUAL AND PROCEDURAL BACKGROUND

*A. Property and Junior Lien: Litigation*

From 2001 to 2008, Appellant owned a large parcel of real property that was planted with avocado and other trees, and he built infrastructure improvements toward the development of multiple two-acre homesites. The seller, PFI, held a first trust deed on the property, securing its 2001 loan.[2]

In 2005, Highland loaned Appellant $1.5 million in return for his promissory note, taking a second trust deed on the property as security.

Appellant pursued development efforts until October 2007, when the property was extensively damaged by wildfire. He subsequently defaulted on Highland's loan.

In July 2008, Highland foreclosed on its second trust deed under its power of sale, on a partial credit bid of $1 million, and held the property until 2010. Appellant's remaining indebtedness on the note was $837,385.29, including preforeclosure interest and attorney fees.

---

[2]     The seller and first trust deed holder was PFI, which nonjudicially foreclosed in 2010, wiping out Highland's security. PFI also sued the third party tortfeasors in the master litigation, but its complaint in intervention was dismissed after a demurrer was sustained without leave to amend, and we upheld that ruling in a prior opinion issued in the same trial court case, *Thoryk v. San Diego Gas & Electric Company* (Aug. 20, 2012, D060399) [nonpub. opn.] (our prior opinion).

In 2009, Appellant sued the third party tortfeasors for damages on theories including inverse condemnation and negligence, pursuant to a second amended master complaint. Appellant alleged the fires had damaged and destroyed the real property, trees, improvements and personal property, during his ownership.

Highland's complaint in intervention is modeled on the master complaint against the third party tortfeasors, and alleges that it had acquired an interest in the subject property through nonjudicial foreclosure. Additionally, against Appellant, Highland added a 17th cause of action for declaratory relief that sought to impose a lien on any eventual recovery Appellant might obtain against the third party tortfeasors, for physical damage to the property. Highland asserted that Appellant's note and debt survived the nonjudicial foreclosures and it was entitled to recover damages or a lien up to the remaining indebtedness on the note, $837,385.29, plus attorney fees and postforeclosure/prejudgment interest.

### B. Status of Senior Trust Deed; Prior Opinion

In June 2010, Highland defaulted on the loan secured by the first trust deed, and the senior lender, PFI, nonjudicially foreclosed and recovered the property by making a full credit bid of $1,613,926.42 at the trustee's sale.[3]

---

[3] Highland weakly objects on appeal that this record does not clearly establish the fact of the 2010 nonjudicial foreclosure by the senior lienholder (which postdated Highland's own 2008 foreclosure of its junior trust deed). However, Highland's own pleadings and exhibits disclose that this occurred. Moreover, that circumstance was clearly placed before the trial court, and it is not reasonably subject to dispute now.

6

PFI also sued the third party tortfeasors in the master litigation, but its complaint in intervention was dismissed after a demurrer was sustained without leave to amend, based upon lack of standing to seek further damages, in light of its possession of the real property. We upheld that ruling in our prior opinion issued in the same trial court case. In our analysis, we noted that Appellant "owned the real property at the time of the fires. It was then that his cause of action against Defendants accrued. PFI acquired title to the property after it had been damaged by the fires. The transfer of title did not include a transfer of Thoryk's cause of action as the property owner. That cause of action remained with Thoryk as his personal property. (*Vaughn v. Dame Construction Co.* (1990) 223 Cal.App.3d 144, 148-149.) PFI's status as the current owner of the property does not give it standing to sue for damage to the property."

With respect to the status of Appellant's debt to the first lender, PFI, we stated in our prior opinion that its "acquisition of the property by full credit bid extinguished Thoryk's debt, and thus extinguished PFI's security. [Citation.] Furthermore, no exception to the full credit bid rule applied. [Citations.] PFI lacks standing as the holder of a security interest in the property. The court properly sustained the demurrer without leave to amend."

### C. Declaratory Relief Trial; Appellate Briefing on Effect of Ongoing Master Complaint Action

In the coordinated wildfire litigation, the trial court bifurcated for trial Highland's declaratory relief claim against Appellant. At a court trial, offers of proof of the trust deed and the note were submitted. Highland contended that the note was secured not

only by the real property security, but also by mixed collateral and additional security, within the definitions set forth in the trust deed. Thus, Appellant had granted Highland a security interest in the real property by parcel number, including "all money held on deposit . . . related to the Real Property," and "all other rights, royalties and profits relating" to it.

Highland also relied on the form deed's definitions of "Property," as including both real property and personal property. Generally, "personal property" includes money related to the real property, as well as all substitutions or replacements for such property. Also, the trust deed grants the lender a security interest in the property under the Commercial Code, to the extent any of the property constitutes fixtures or other personal property.

The matter was argued and submitted, and the trial court granted Highland's request for a declaration that it was entitled to a lien, both under the deed of trust and pursuant to the equitable conversion theory. (*Bortenstein, supra*, 47 Cal.App. 421, 423-424.) This appeal followed.

In their briefs, the parties discuss how the remaining master complaint litigation will potentially allocate any recovery against the third party tortfeasors for property damage, in terms of measures of damages. Appellant's brief states on this topic, "[t]he measure of the property's values immediately before and after the wildfires will ultimately be the subject of dispute at trial with the defendants. If the property retained

8

sufficient value after the wildfires to satisfy both liens against it, then Highland Valley's security interest was not impaired at all."[4]

Highland takes several different positions on this topic, mainly arguing that Appellant's rights to recover fall within the category of personal property security created by the trust deed and note. Highland alternatively argues that all of Appellant's rights to recover for injury to the real property under tort and inverse condemnation theories, against the third party tortfeasors, were already foreclosed upon under the power of sale and are thus owned by Highland. It states, "While it may be true that amounts recovered by Highland from [third party tortfeasors] will become credits against the amount of the lien, that issue was not and is not before the Court, as there is no evidence of any such recovery, nor has there been one as of the date of this writing. [¶] [Appellant does] not purport to address the question of the amount secured by the lien after a partial credit bid at foreclosure, the accrual of interest on the amount remaining unpaid, or the effect of

---

[4]      Appellant contradictorily argues that even if Highland did, at the moment of nonjudicial foreclosure, have a lien against Appellant's own claims against the third party tortfeasors, "that lien interest was emphatically extinguished when [PFI] foreclosed in July 2010. This is because [PFI] was a senior lienholder and, under California law, foreclosure of a prior mortgage or deed of trust extinguishes any inferior mortgage lien." For our purposes, we accept Appellant's main concession that Highland can and will continue to pursue its own claims for impairment of security against the third party tortfeasors in the master complaint proceedings. This may include the period that Highland held title, 2008 to 2010, as well as impairment of security. (See *American Savings & Loan Association v. Leeds* (1968) 68 Cal.2d 611, 614, fn. 2 [stating that "[w]hen a third person tortiously damages the property, both the mortgagor and mortgagee may sue the third party tortfeasor. If the mortgagor sues first, he may recover the total amount of damage to the property, but the fund recovered is subject to the lien of the mortgagee to the amount that his security has been damaged"].)

foreclosure on a portion of the collateral on the ability to enforce the lien on the remainder."

Those particular disputes need not now be resolved. At this time, only the declaratory relief issued concerning Highland's lien against any future recovery by Appellant is before this court.

## DISCUSSION

Generally, the parties agree that the historical facts are undisputed and that on appeal, the trial court's resolution of the legal issues presented by the documents in the record and application of statutes is subject to de novo review. (*Dreyfuss v. Union Bank of California* (2000) 24 Cal.4th 400, 406 (*Dreyfuss*); *Trujillo v. North County Transit District* (1998) 63 Cal.App.4th 280, 284.)

We interpret the trust deed, an executed contract, under the rules of interpretation applicable to contracts in general. "The prime rule for interpreting deeds is to determine the objective (and not the subjective) intent of the parties by an examination of the deed. . . . [¶] Since the language of each instrument is sui generis, no bright-line rules of construction exist for determining the parties' actual intent, which is the ultimate interpretive touchstone. Accordingly, despite the technical rules of construction, the court must review the entire instrument to ascertain the actual intent of the parties so far as can be determined." (3 Miller & Starr, *supra,* § 8:2, pp. 8-8 to 8-10, fns. omitted; *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866; *City of Manhattan Beach v. Superior Court* (1996) 13 Cal.4th 232, 238.)

10

# I

*DEFICIENCY JUDGMENT DOCTRINE*

A.  Nonjudicial Foreclosure Statutory Scheme

In pertinent part, section 580d provides:  "No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property or an estate for years therein hereafter executed in any case in which the real property or estate for years therein has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust."[5]

" 'A "deficiency judgment" is a personal judgment against a debtor for a recovery of the secured debt measured by the difference between the debt and the net proceeds received from the foreclosure sale.' "  (*Dreyfuss*, *supra*, 24 Cal.4th at p. 407, citing, e.g., *Hatch, supra*, 19 Cal.2d 254, 261 [defining a deficiency judgment as "a personal judgment for the unpaid balance due upon an obligation after unsuccessful resort to the security"].)  Under the one form of action rule, section 726, subdivision (a), "a secured creditor is generally required to pursue its security, not the underlying obligation."  (*Cadlerock Joint Venture, L.P. v. Lobel* (2012) 206 Cal.App.4th 1531, 1549 (*Cadlerock*).)

" 'The antideficiency statutes are to be construed liberally to effectuate the legislative purposes underlying them, including the policies " '(1) to prevent a multiplicity

---

[5]    In 2013, section 580d was amended to add a new subdivision (b), but the amendment does not implicate any of the issues raised in this appeal.  The operative language remained the same.  (Stats. 2013, ch. 65, § 3.)

of actions, (2) to prevent an overvaluation of the security, (3) to prevent the aggravation of an economic recession which would result if [debtors] lost their property and were also burdened with personal liability, and (4) to prevent the creditor from making an unreasonably low bid at the foreclosure sale, acquire the asset below its value, and also recover a personal judgment against the debtor.' " ' " (*Cadlerock, supra*, 206 Cal.App.4th at p. 1541.)  "[S]ection 580d should be interpreted to avoid the thwarting of its purposes 'by a subterfuge . . . .' " (*Cadlerock, supra,* at p. 1541, quoting *Freedland v. Greco* (1955) 45 Cal.2d 462, 468.)

"There is a relationship between the 'security first' aspect of the one-action rule and the prohibition against a deficiency judgment after a nonjudicial foreclosure sale, and the issues often arise in the same case.  [¶] The security-first aspect of the one-action rule requires that all of the security be exhausted prior to the recovery of personal liability against the trustor.  When the beneficiary forecloses a deed of trust by the private power of sale, there is a prohibition against the recovery of a personal judgment against the trustor.  However, in both instances, the beneficiary is entitled to pursue all of the security for the debt and, after a nonjudicial foreclosure of a mortgage or deed of trust, the beneficiary may also foreclose *any other security for the same debt*.  The same rule applies under the antideficiency limitations that allow the beneficiary to foreclose liens on other assets that are security for the debt after a nonjudicial foreclosure on one of the assets." (4 Miller & Starr, *supra,* § 10:260, pp. 10-1033 to 10-1034; fns. omitted, italics added.)

12

B.  Exceptions to Prohibition on Deficiency Judgments

In the underlying master complaint proceedings, Highland's complaint in intervention is an appropriate means to pursue its own remedies against the third party tortfeasors, and those fall outside the scope of antideficiency law.  (*Cornelison, supra,* 15 Cal.3d 590, 604, fn. 9; cf. *Romo v. Stewart Title of California* (1995) 35 Cal.App.4th 1609, 1618-1619 (*Romo*) [lender's claims for fraud or negligence damages against a third party tortfeasor (escrow agent), arising during real estate transactions, were unrelated to any claims of impairment of real property security for the loan].)[6]  As against the third party tortfeasors, Highland seeks recovery of inverse condemnation damages on its own behalf from the time that the fires occurred (Oct. 2007).  It additionally seeks damages from them for the impairment of its security interest, measured by the unpaid indebtedness together with interest accrued after the foreclosure date (July 2008), plus attorney fees.

"As to section 580d, its text does not explicitly contemplate the existence of multiple liens on a single real property or the possibility of a sold-out junior lienor." (*Cadlerock, supra*, 206 Cal.App.4th 1531, 1542.)  The current set of facts involves multiple liens on a single real property, held by different lenders.  These facts do not

_____

6    In *Romo*, the lender had made a full credit bid and taken the security, but it was not precluded from seeking unrelated items of tort damages from others.  (*Romo, supra,* 35 Cal.App.4th at pp. 1618-1619; see *Sumitomo Bank v. Taurus Developers, Inc.* (1986) 185 Cal.App.3d 211, 225 [additional negligence damages against the borrower allowed, in a different capacity]; *Brown v. Critchfield* (1980) 100 Cal.App.3d 858, 870-871 [lender's full credit bid did not bar breach of fiduciary duty action against attorney and real estate broker involved in the deal].)

involve the usual definition of a "sold-out" junior lien, where the junior lender's security has been rendered valueless by a nonjudicial foreclosure sale of the property under a senior encumbrance, and the junior lender is not prohibited from obtaining a deficiency judgment. (*Roseleaf Corp. v. Chierighino* (1963) 59 Cal.2d 35, 41-43.) The reason is that the security has been lost by the foreclosure sale of the senior lien, and thus "*the junior lienor can sue the debtor directly on the promissory note, which is then considered unsecured.*" (4 Miller & Starr, *supra,* § 10:261, pp. 10-1041 to 10-1042; italics added.)

Here, Highland foreclosed on its junior lien under the power of sale and obtained its security, but only held it for a limited time period. Normally, where a junior lienholder has made an election to proceed against the real property securing the debt under the power of sale, section 580d precludes a deficiency judgment. (*In re Marriage of Oropallo* (1998) 68 Cal.App.4th 997, 1005 [the senior lienholder had taken part of the junior's security, and the junior nonjudicially foreclosed on the remainder, and thus could not also attempt to collect a deficiency judgment].) In *Freedland v. Greco, supra,* 45 Cal.2d 462, 466-468, the court ruled that a judicial action on a separate note based on the same debt, following nonjudicial foreclosure on real property security for the debt, was barred by antideficiency legislation.

Through the lien, Highland effectively seeks to appropriate to itself Appellant's future recovery for tortious conduct of others, if he obtains any on his own behalf. Appellant claims this declaration that Highland is entitled to such recovery against him improperly exceeded the extent to which its own security interest was impaired, for the 2005 to 2008 lending period. It thus appears that the master complaint proceedings will

14

involve some resolution of the respective rights of the parties to keep any recovery they may obtain from the third party tortfeasors, under some kind of allocation for the different periods of ownership of the property, subject to the periods in which Highland still held a security interest.

For now, we are required to consider only Appellant's claims that this lien on any recovery he may receive for property damage or inverse condemnation damages, or to secure an ongoing obligation for interest and attorney fees, is not supported by any separate collateral identified in an ongoing debtor-creditor relationship with Highland.

II

*ADDITIONAL SECURITY THEORY*

A.  Issues Presented

Where, as here, the creditor sues a third party tortfeasor for impairment of security, that claim is based on a cause of action separate and apart from any attempt to recover on the note or the debt.  (*Birman, supra*, 64 Cal.App.4th 502, 516.)

As against Appellant, Highland seeks to avoid the operation of the antideficiency law, by showing that the language of the trust deed and note created additional collateral, beyond the real property security that it took under power of sale.  Its lien theory against Appellant requires Highland to justify its argument that deficiency principles and the one action rule of section 726 allow "seriatim foreclosure of mixed collateral" in this case. (Comm. Code, § 9604, subd. (a)(2)(A); *Walker v. Community Bank* (1974) 10 Cal.3d 729, 736; see pt. III, *post*, for discussion of Highland's alternative claim that any potential

15

eminent domain recovery by Appellant amounts to a substitute for the real property itself, under the equitable conversion doctrine; *Bortenstein*, *supra*, 47 Cal.App. at pp. 423-424.)

Where additional collateral was created for an obligation, a debtor-creditor relationship may survive a nonjudicial foreclosure, if the proceeds of the sale were insufficient to pay the debt. *(See Redingler v. Imperial Savings & Loan Assn.* (1975) 47 Cal.App.3d 48, 50-51 (*Redingler*) [creditor could collect on insurance policy named as additional security for mortgage, up to the amount of the indebtedness remaining after the foreclosure sale].) In *Sampsell, supra,* 51 Cal.App.2d 180, 186, the foreclosing creditor could collect on the debtor's assignment of rental income, because "the sale of the real property under the deed of trust does not wipe out the indebtedness nor prevent the creditor from proceeding to recover upon any other security." (*Ibid.*)

Highland likewise claims that antideficiency law does not prohibit this lien, because these loan documents created additional, unrealized personal property collateral that remained after the nonjudicial foreclosure, to be applied to the unpaid loan balance. Commercial Code section 9601 allows a lender to proceed in any sequence to realize on the security, including foreclosing on the real property first and the personal property thereafter. Highland argues that since Appellant's indebtedness was not fully paid by the proceeds of the foreclosure, the debt continued to exist and should bear post-foreclosure interest according to its terms, and the attorney fees provisions of the note and deed would also survive, postforeclosure.

16

B.  Terms of Trust Deed and Note:  Security

The trust deed appears to be a standard form document, referring, for example, to keeping the property in tenantable condition, although this was basically raw land with some infrastructure improvements.  The "CONVEYANCE AND GRANT" in this deed of trust, with a power of sale, identifies the "real property" it secures by assessor's parcel numbers, further defining the "real property" as including all fixtures, easements, water rights, plans or engineering reports, permits, entitlements, "and all money *held on deposit* for any of the foregoing or otherwise related to the Real Property; *and all other rights, royalties, and profits relating to the real property*, including without limitation all minerals . . . ."

Next, the trust deed entitles the beneficiary to require that all or any part of an inverse condemnation award be applied to the unpaid indebtedness.  (See pt. III, *post*; such contract rights are limited by statute, § 1265.225, subd. (a).)

The trust deed's "property" definitions include both real and personal property. "Personal property" includes "money related to the real property," or money held on deposit.  "Personal property" also includes "all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property."  (No issues are raised about insurance proceeds here.)

The trust deed provides that it "shall constitute a Security Agreement to the extent any of the Property constitutes fixtures or other personal property, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from

17

time to time." With regard to the personal property, such as fixtures, the lender is given all the rights of a secured party, "including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law."

C. Terms of Trust and Note: Attorney Fees and Interest Provisions

The terms of the promissory note acknowledge that it is secured by the second trust deed, "in addition to any other collateral." It states that any unpaid balance bears interest at the nondefault rate of 11.99 percent per annum, and upon default at the rate of 16.99 percent per annum.

The note and trust deed each contain an attorney fees clause for fees incurred in enforcing the terms of the note and/or trust deed. Also, the terms of the trust deed allow to Lender "all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights," as part of the indebtedness.

D. Mixed, Additional or Substitute Collateral Cases

Here, as in *Birman, supra*, 64 Cal.App.4th 502, 518, the nonjudicial foreclosure, at which Highland acquired the property for less than the full amount of the outstanding indebtedness, did not extinguish all of the debt on the note. (*Id*. at p. 518; *Cornelison, supra,* 15 Cal.3d at pp. 607-608.) The question is what further recourse Highland should have, that does not contravene the purpose of the antideficiency statutes.

In other situations, creditors have been allowed additional recovery against a debtor following foreclosure under a power of sale, because the particular claims did not conflict with the policy behind the antideficiency laws. (*Birman, supra,* 64 Cal.App.4th

18

502, 514.)  Thus, "[t]he courts have repeatedly held that resort to additional security following a nonjudicial foreclosure is not an attempt to secure a deficiency judgment." (*Ibid.*)

These cases that allow a nonjudicially foreclosing lender to resort to "additional security" involve certain types of valuable property that were mentioned or incorporated into the mortgage documents.  In *Dreyfuss, supra*, 24 Cal.4th 400, 406, 411-412, serial enforcement of security was allowed, through separate nonjudicial foreclosure proceedings, because the borrowers had separately granted security interests in several different parcels of real property.  In *Redingler, supra*, 47 Cal.App.3d at pages 50 to 51, the borrower had specifically agreed to allow insurance policy proceeds to be paid to the lender.  In *Sampsell, supra,* 51 Cal.App.2d 180, 186, the borrower had assigned certain rental income to the lender, which could be reached despite a nonjudicial foreclosure.

With regard to the attorney fees now being sought, the court in *Passanisi v. Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, 1509 (*Passanisi*), held the purposes of section 580d do not prevent a creditor-beneficiary from recovering attorney fees and costs it had expended to defend a separate action brought by the debtor-trustor to restrain foreclosure of the security under the power of sale.  In that situation, even though the security property was later sold at a trustee's sale, the judgment for attorney fees and costs was separate and enforceable.  In *Passanisi*, when the creditor foreclosed, there was a surplus of funds, so the creditor's bid exceeded the debt.  (*Id*. at p. 1504.)  There were mutual debts, allowing offsets.  "The creditor owed the debtors the surplus from the

19

foreclosure sale. The debtors were liable to the creditor on the judgment for attorney's fees and costs." (*Birman, supra,* 64 Cal.App.4th 502, 520.)

In *Passanisi*, the court observed, "Section 580d does not by its express terms apply in such a case, nor does the policy behind section 580d dictate such a result. Enforcement of the judgment for attorney's fees and costs is not simply a subterfuge for the collection of a deficiency on the secured note. The award for attorney's fees and costs is neither measured by, nor interrelated to, a deficiency on the note." (*Passanisi*, *supra*, 190 Cal.App.3d 1496, 1509.) The reasoning of such cases examines whether any enforceable mutual obligations existed between the parties, after the remedy of nonjudicial foreclosure on a trust deed is elected.

### E. Analysis

From a plain reading of the trust deed, we think that the general references to personal property, money held on deposit related to the real property, or rights relating to the real property, are too general to amount to sufficiently specific designations of existing "additional" security. The personal property rights relating to the property are not sufficiently described as separate and distinct, to have survived the nonjudicial foreclosure or to have created remaining mixed or additional collateral, to support a lien that effectively creates a money judgment. The items listed in the deed as amounting to "other rights . . . relating to the real property," such as mineral rights, do not include future tort recovery by Appellant, under a reasonable reading of the trust deed.

Rather, Highland's foreclosure on the junior deed of trust under its power of sale merged and extinguished Highland's security rights in the real property, and the personal

20

property security interests identified in the trust deed were likewise extinguished. Next, its junior mortgage lien was discharged when the nonjudicial foreclosure of the senior deed of trust occurred. (4 Witkin, Summary of Cal. Law (10th ed. 2005) Security Transactions in Real Property, § 116, p. 907.) The debtor-creditor relationship was not preserved, and thus Highland's claim for attorney fees and interest, based on the note, is not now enforceable, without a stronger showing of the availability of additional or mixed collateral, beyond the real property security. (See *Rosenbaum v. Funcannon* (9th Cir. 1962) 308 F.2d 680, 684 [even where a trust deed is extinguished through sale of the property, the debt itself may not be extinguished but may be unenforceable].) Highland has not shown current entitlement to any continuing interest and attorney fees that would be recoverable and consistent with antideficiency protections.

The general rule is that a lien may be created in a mortgage on " 'property not yet acquired,' " and the lien will attach at the time it is acquired. (4 Witkin, Summary of Cal. Law, *supra*, Security Transactions in Real Property, § 34, p. 829; Civ. Code, § 2883, subd. (a).) However, the mortgage must contain an express provision to that effect. (*Hosford v. Henry* (1951) 107 Cal.App.2d 765, 774-775; cf. *Duarte v. Lake Gregory Land & Water Co.* (1974) 39 Cal.App.3d 101, 103-105 [holding that even though the lender had been assigned "any award of damages" for injury to property, the lender's full credit bid in exercise of its power of sale served to extinguish the mortgage and security interest, including the assignment clause, and no additional security rights remained].)

There is no express language in this trust deed that assigns any tort claims for injury to the real property as "additional security" for the mortgage debt, as falling within

21

the category of "all other rights, royalties and profits relating to the real property. . . ." When the loan was made in 2005, the 2007 wildfires had not occurred, to give rise to Appellant's cause of action against the third party tortfeasors. That cause of action for tort damages accrued when the fires occurred and was his personal property that would be assignable as a chose in action. (1 Witkin, Summary of Cal. Law, *supra,* Contracts, § 720, pp. 805-806; see *Vaughn v. Dame Construction Co., supra,* 223 Cal.App.3d 144, 148-149; *Keru Investments, Inc. v. Cube Co*. (1998) 63 Cal.App.4th 1412, 1424.) A transfer of title, through nonjudicial foreclosure, would not ordinarily include a transfer of a right of action as a property owner, which is viewed as personal property. No such assignment was made clear here.

Under Commercial Code section 9204, Appellant's claim against the third party tortfeasors amounts to a "commercial tort claim" (it arose in the course of his business and did not include personal injury damages). (Comm. Code, § 9102, subd. (13); § 9108, subd. (e).) As an after-acquired property asset, this tort claim does not constitute a security interest, without more specific assigning language. We cannot see how Appellant's chose in action against the third party tortfeasors was expressly or impliedly included in the "personal property" defined by the trust deed, as money "related to the Real Property."

In conclusion, the lien imposed was impermissibly measured by, and interrelated to, the remaining deficiency on the note, but these loan documents did not create additional available security for the same obligation. (*Passanisi, supra*, 190 Cal.App.3d 1496, 1504.) This plain reading of the loan documents leaves some additional questions

22

remaining about the equitable conversion doctrine based on the inverse condemnation claims being asserted, respectively, by Highland and Appellant.

III

*EQUITABLE CONVERSION*

A. Law

Equitable conversion theory will permit a lender to recover from the borrower's tort damages fund, to the amount that its security was damaged. *(American Savings & Loan Association v. Leeds, supra,* 68 Cal.2d 611, 614, fn. 2.) The theory is that condemnation of an entire mortgaged property "in effect substitutes a money award for the security of the land mortgaged, and the mortgagee is ordinarily entitled to as much of the award as is necessary to satisfy the debt." (4 Witkin, Summary of Cal. Law, *supra,* Security Transactions in Real Property, § 81, p. 870.) This rule presupposes that the lender still has a security interest in the real property, based on a debt, when entitlement to the money award arises and is made. (See 4 Miller & Starr, *supra,* § 10:75, p. 10-292 ["On condemnation of property that is security for a debt, the lender loses its lien on the real property, but the condemnation award is substituted for the property and the lender obtains a lien on the condemnation proceeds."], fn. omitted.)

In *Bortenstein, supra*, 47 Cal.App. at pages 423 to 424, the court stated, "It is a well-recognized rule of equity, based upon the doctrine of equitable conversion, that when land is taken for public use, the money awarded for such land remains, and is to be considered, as land in respect to all rights and interests relating thereto. The money, in such cases, is deemed to represent the land, and is applied in equity to discharge the liens

23

upon it, precisely in accordance with the legal or equitable rights of creditors or encumbrancers in respect to such land."

In *Bortenstein,* the mortgagee was permitted in a judicial foreclosure action to "impress with his mortgage lien a fund that has taken the place of so much of the mortgaged realty as was destroyed by the flood. [¶] The foreclosure decree makes no attempt to fasten upon appellant [Bortenstein, the mortgagor] a personal liability for a deficiency judgment. The 'deficiency' referred to in the decree is a deficiency that may remain after the sheriff's sale of the partially destroyed mortgaged premises. And that 'deficiency,' if any there may be, is to be made good out of so much of a fund as, in equity, is deemed to represent that part of the mortgaged property that was destroyed by the flood." (*Bortenstein, supra,* 47 Cal.App. at p. 425.) Thus, the damages awarded in the action against the condemnor had not been limited to Bortenstein's interest (as owner of land subject to a mortgage), but covered all the damage done by the flood to all of the property, including the security interest: "Therefore, the money so awarded by the court as damages to the realty must be treated, in equity, as the land itself. It takes the place of the reduced value of the land," and the mortgagee could recover its portion. (*Id.* at p. 424.)

*Rose v. Conlin* (1921) 52 Cal.App. 225, 231-232, also allowed a lender to bring a postforeclosure action against the foreclosed borrower's inverse condemnation recovery. A commentator summarizes this holding: "When the condemnor takes less than a fee title interest and the indebtedness is overdue or in default, the beneficiary can foreclose on the land. If the proceeds of the foreclosure sale are inadequate, the beneficiary can

24

resort to the condemnation award for the recovery of any shortage." (4 Miller & Starr, *supra,* § 10:75, p. 10-296; fn. omitted.) *Rose* and *Bortenstein, supra*, 47 Cal.App. 421 dealt with purchase-money mortgages, and their analysis that condemnation proceedings are "substituted security" for the debt may logically apply when a lender has nonjudicially foreclosed but seeks to proceed against "additional security." (4 Miller & Starr, *supra,* § 10:75, pp. 10-297, fn. 25.)

"The theory upon which all these remedies rest is one of equitable conversion or substituted property: '[T]he money so awarded by the court as damages to the realty must be treated, in equity, as the land itself. It takes the place of the reduced value of the land. The mortgaged land, in its present damaged condition, together with such portion of all the moneys awarded for the total injury as represents the damage to the mortgaged premises, stand now in the place and stead of the original uninjured mortgaged premises.' " (*American Savings & Loan Association v. Leeds, supra*, 68 Cal.2d 611, 615, fn. 2.)

The terms of this trust deed granted Highland, the lender, the right to obtain the borrower's eminent domain or inverse condemnation damages. Such contract rights are limited by statute, as set forth in section 1265.225, subdivision (a): "Where there is a partial taking of property encumbered by a lien, the lienholder may share in the award only to the extent determined by the court to be necessary to prevent an impairment of the security, and the lien shall continue upon the part of the property not taken as security for the unpaid portion of the indebtedness." A commentator explains the need for this provision: "A typical form deed of trust provides that upon any condemnation of the

25

property that is security for the lien, all of the proceeds must be paid to the lender whether the amount of property taken is all of the security or only a portion of it. However, the statutory provision for the allocation of the condemnation award based on the impairment of the security is controlling and supersedes the provisions in the deed of trust."  (4 Miller & Starr, *supra,* § 10:75, pp. 10-293 to 10-294, fns. omitted.)

## B.  Application

We determined above that Highland is not attempting to reach "additional" security or property, as specifically defined in the trust deed.  To show entitlement to this "substitute" form of security, the lender must retain a proportional security interest in the real property, that is still in force at the relevant times.  The judgment for a lien gave credit to Highland, by operation of law though equitable conversion, for any future eminent domain damages that Appellant may obtain.

However, to allow such an equitable setoff to apply, there must remain mutual debts between the parties, exclusive of the security remedy.  (*Passanisi, supra,* 190 Cal.App.3d at p. 1512; *Birman, supra*, 64 Cal.App.4th 502, 520 [creditor in *Passanisi* owed the debtors the surplus from the foreclosure sale, while the debtors were liable to the creditor on the judgment for attorney fees and costs, so an offset was allowed].) Here, Highland opted to take the security through foreclosure under a power of sale.  It has no basis to seek proportional equitable conversion damages against Appellant, since the land itself is no longer at issue.

Since *Rose* and *Bortenstein* were decided, section 580d was enacted, and it strengthens antideficiency protections.  Those cases still remain good law, but each case

26

must be evaluated on its own facts. In *Rose*, the mortgagee had not been made a party to the mortgagor's eminent domain action, pending judicial proceedings to foreclose the mortgage, and the mortgagee was therefore entitled to assert equitable rights to the benefits obtained by such mortgagor against the condemnor. (*Rose v. Conlin, supra,* 52 Cal.App. 225, 227-232.) In *Bortenstein, supra,* 47 Cal.App. 421, it was not fair for the mortgagor to retain all of the separately awarded eminent domain damages, because he had received not only an amount for his own property damage, but also for the mortgagee's security interest in the property as a whole. (*Id.* at pp. 424-425.)

The current lien effectively amounts to a deficiency judgment, "a personal judgment against the debtor-mortgagor for the difference between the fair market value of the property held as security and the outstanding indebtedness." (*Cornelison, supra,* 15 Cal.3d at p. 603.) Highland's requested lien would improperly grant it "a personal judgment for the unpaid balance due upon an obligation after unsuccessful resort to the security." (*Hatch, supra,* 19 Cal.2d at p. 261.) Here as in *Birman*, "Following foreclosure, defendants were left with an unsecured, unenforceable claim for the balance due on the promissory note. They had no recourse beyond the security." (*Birman, supra*, 64 Cal.App.4th 502, 520; *Hatch, supra,* at p. 261.) Following foreclosure, no further mutual obligations remain between the parties on the unpaid balance of the note. (*In re Marriage of Oropallo*, *supra*, 68 Cal.App.4th at pp. 1005-1008.)

We cannot foresee whether any independent equitable offset or allocation issues may arise, based on the appropriate measure of damages for the different claims being asserted in the master complaint, by each real party in interest for its period of ownership.

27

We decide only that the lien was incorrectly imposed and equitable issues may remain for the trial court, to be resolved on a fuller record to be developed.

DISPOSITION

Reversed, with directions to enter a different judgment denying the lien application.  Costs are awarded to Appellant.


HUFFMAN, Acting P. J.

WE CONCUR:


McDONALD, J.


McINTYRE, J.