Filed 8/18/15  Van Buren Estates Lenders v. Fiegl CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| VAN BUREN ESTATES LENDERS, LLC, | |
| Plaintiff and Respondent. | E060094 |
| v. | (Super.Ct.No. INC1206888) |
| GEORGE FIDELIS FIEGL, | OPINION |
| Defendant and Appellant, | |

APPEAL from the Superior Court of Riverside County.  John G. Evans, Judge.

Affirmed.

Goode, Hemme & Peterson, Jerry D. Hemme and Arnold Neves, Jr., for Defendant and Appellant.

Rossi, Hamerslough, Reischl & Chuck, Ronald R. Rossi and Richard B. Gullen for Plaintiff and Respondent.

1

Defendant George Fidelis Fiegl appeals from a stipulated judgment following the trial court's ruling on a motion for summary adjudication brought by plaintiff Van Buren Estates Lenders LLC (Lenders). Fiegl contends the trial court erred in determining that his judicial lien against a $2.6 million fund is junior to Lenders' lien under a deed of trust recorded against the real property, formerly owned by Van Buren Estates Partners (Partners), on which Lenders had foreclosed. Fiegl first asserts that the fund did not represent insurance proceeds, but was instead a judgment for commercial tort that was not secured under Lenders' deed of trust. Fiegl argues, in the alternative, that if the fund did represent insurance proceeds, such proceeds arose from losses sustained in connection with the title to the property, and were therefore not covered in the provisions of Lenders' deed of trust that granted a security interest in insurance proceeds arising "in connection with the Land and/or Improvements."

We find no error, and we affirm.

## FACTS AND PROCEDURAL BACKGROUND

In March 2008, Fiegl loaned $7.2 million to Partners to subdivide a 163-acre parcel in the Coachella Valley owned by Partners. Fiegl's loan was secured by a second deed of trust. Around the same time, Lenders loaned Partners $10.45 million for the project. Lenders' loan was secured by a first deed of trust under which Lenders' security interest attached to, among other things, "all insurance proceeds payable to [Partners] in connection with the Land and/or Improvements whether or not such insurance coverage is specifically required" and "all causes of action and recoveries for any diminution in the

2

value of the Land and/or Improvements." It is undisputed that Fiegl's second deed of trust was junior to Lenders' deed of trust.

In 2005, Partners' predecessors acquired title to the land and obtained title insurance from Stewart Title of California, Inc. The title insurance policies failed to disclose that the land was encumbered by right-of-way easements in favor of the Coachella Valley Water District (CVWD). Those easements conflicted with the configuration of residential lots approved for development on a tentative map Partners obtained from the County of Riverside. In October 2007, Partners' predecessors learned of the CVWD easements. Although Stewart Title initially indicated Partners had coverage for the missed easements, it eventually reversed its position, withdrew coverage, and denied Partners' title claim.

In March 2010, Partners filed an action against Stewart Title for negligence, bad faith, breach of contract, and related theories of liability. In March 2012, following trial, a jury awarded $6.5 million in compensatory and over 2.5 million in punitive damages against Stewart Title. Stewart Title brought a motion for judgment notwithstanding the verdict in that action with respect to the award of punitive damages. As to bad faith, the trial court held, "Whether or not there was a genuine dispute over contract formation depends on what the jury found the facts to be. It is not a question of law for the court. The jury was free to conclude that [Stewart Title's] decision to deny the policy based solely on the absence of proof of payment of a premium and its manner of investigation was unreasonable and in bad faith. Once again, there was evidence on both sides of the issue which would be sufficient [to] support the jury's finding, either way." With respect

3

to punitive damages, the trial court held that "there was insufficient clear and convincing evidence to establish that any [malice, oppression, or fraud] was committed or ratified by an officer, director or managing agent of [Stewart Title]." The trial court struck the punitive damages, reduced the judgment to the policy limits of $3,932,000, and awarded Partners attorney fees under *Brandt v. Superior Court* (1985) 37 Cal.3d 813 (*Brandt*). Notices of appeal were filed in that action on July 19 and 20, 2012.

Meanwhile, in March 2010, Partners defaulted on the loans to Fiegl and Lenders. In 2012, although overdue principal and interest on the two loans exceeded $27 million, the appraised value of the land was then less than $3 million. Lenders, in first position, was owed over $14 million, so Fiegl's debt was unsecured.

On June 20, 2012, Fiegl filed an action against Partners and its principals to collect on the note and to assert claims for breach of contract, judicial foreclosure, fraud, and negligent misrepresentation. He alleged that because his second deed of trust encumbered only the land, and the land was now worth less than Lenders' loan, there was no equity left to secure his loan. He then filed an application for a right to attach order and moved for a lien on the judgment Partners had obtained against Stewart Title. On November 13, 2012, the trial court granted Fiegl's motion, and Fiegl's lien on the Stewart Title judgment attached.

Meanwhile, in September 2012, Lenders filed its complaint in the instant action against Fiegl and Partners seeking, among other things, declaratory relief to determine whether Lenders' deed of trust attached a lien to the Stewart Title judgment such that the judgment was encumbered by Lenders' security interest.

4

In early 2013, Partners and Stewart Title settled their case for $2.8 million. The agreement provided that the settlement was "paid in full satisfaction of the award of compensatory damages under the Policies, with the damages awards for breach of the implied covenants of good faith and fair dealing being fully released" and that there was no award of punitive damages. The agreement further provided that the settlement amount was not being paid for any attorney fees awarded under *Brandt*. The parties agreed to abandon their pending appeals. Lenders, Partners, and Fiegl agreed that the proceeds (less $171,000 paid to Partners' attorney) would be held in a joint account until the court determined whether Fiegl or Lenders was entitled to the money. Fiegl's consent to the settlement was "pursuant to [Code of Civil Procedure section] 491.440 and conditioned upon his lien rights" attaching to the settlement proceeds.

On March 18, 2013, Lenders nonjudicially foreclosed on the Property under Lenders' deed of trust. Lenders was the high bidder with a credit bid of $7,870,627. The total then owed on Lenders' note was $15,580,147.92, leaving a deficiency of $7,709,520.92.

On March 28, 2013, Lenders filed a motion for summary adjudication of issues on its cause of action for declaratory relief. The trial court granted the motion. The court ruled that the collateral described in Lenders' deed of trust included all insurance proceeds payable to Partners in connection with the land and/or improvements and all causes of action and recoveries for any diminution in value of the land or improvements, and Partners' judgment against Stewart Title constituted such insurance proceeds and was based on diminution in value. The court ruled that Partners' claim was based on a

5

contract, not a commercial tort, because (1) the jury's award was based on breach of contract damages; (2) the court had reduced the award to policy limits; (3) the court had stricken the punitive damages award; and (4) the settlement agreement between Partners and Stewart Title provided that the amount paid was only for breach of contract. The trial court thereafter entered judgment pursuant to a stipulation of the parties.

Additional facts are set forth in the discussion of the issues to which they pertain.

DISCUSSION

**Standard of Review**

This court makes an independent interpretation of a written contract when, as here, there was no conflicting extrinsic evidence. (*Milazo v. Gulf Ins. Co.* (1990) 224 Cal.App.3d 1528, 1534.) We interpret a trust deed "under the rules of interpretation applicable to contracts in general," and we review the entire instrument to determine the objective intent of the parties. (*Thoryk v. San Diego Gas & Electric Co.* (2014) 225 Cal.App.4th 386, 397 (*Thoryk*).)

**Did Lenders' Deed of Trust Attach a Security Interest to the Proceeds of the Stewart Title Settlement?**

Fiegl contends that the fund did not represent insurance proceeds but was instead a judgment for commercial tort damages that was not secured under Lenders' deed of trust.

California's antideficiency statute, Code of Civil Procedure section 580d, prohibits a judgment against a debtor following foreclosure. However, "it does not prevent a creditor from realizing on additional security." (*Redingler v. Imperial Savings & Loan Assn.* (1975) 47 Cal.App.3d 48, 50 (*Redingler*).) A secured lender obtains a security

6

interest in additional assets of the debtor that are specifically described as collateral for the loan; however, general descriptions are not sufficient. (*Thoryk*, *supra*, 225 Cal.App.4th at pp. 404-405.)

In *Redingler*, for example, the court held that a lender who had foreclosed for less than the amount due under a deed of trust could recover on proceeds from a fire insurance policy when the lender held the policy as security for performance of the trust and was named as a payee under the policy. (*Redingler*, *supra*, 47 Cal.App.3d at pp. 50-51.) In *Thoryk*, in contrast, the court held that there was not additional security interest in the borrower's recovery in tort based on fire damage to the property. The court explained, "There is no express language in this trust deed that assigns any tort claims for injury to the real property as 'additional security' for the mortgage debt, as falling within the category of 'all other rights, royalties and profits relating to the real property. . . .'" (*Thoryk*, *supra*, 225 Cal.App.4th at p. 405.)

Here, as recounted *ante*, the trial court found that the Stewart Title judgment was based on a contract claim because the jury awarded damages for breach of contract. The trial court reduced those damages to the policy limits and struck the punitive damages award. The settlement agreement provided that the damages were only paid for breach of contract, and that damages for bad faith were fully released. We agree with the trial court's conclusion. An insured's claim against an insurer for breach of the implied covenant of good faith and fair dealing may give rise to an action either in contract or in tort, depending on the damages sought. "Unlike with any other contract [citation], the breach of an *insurance* contract (by the insurer) of the implied covenant of good faith and

7

fair dealing will give rise to an action in tort by the insured, as well as one in contract, at the election of the insured (or assignee). An action for recovery on either theory is what is commonly referred to as one for 'bad faith.' There is a significant difference, however, in the available remedies. If the insured elects to proceed in tort, recovery is possible for not only all unpaid policy benefits and other contract damages, but also extra-contractual damages such as those for emotional distress, punitive damages and attorney fees." (*Archdale v. American Internat. Specialty Lines Ins. Co.* (2007) 154 Cal.App.4th 449, 467, fn. 19.)

Here, Partners alleged both tort and contract claims in its complaint. "'A party should be entitled to change alternative remedies until satisfaction of judgment, or application of res judicata or estoppel, vindicates one of the inconsistent rights.'" (*Smith v. Golden Eagle Ins. Co.* (1999) 69 Cal.App.4th 1371, 1375.) In the settlement agreement, Partners elected the contract remedy of compensatory damages and expressly waived claims for bad faith.

Fiegl argues nonetheless that the settlement agreement could not affect his lien because it attached to the judgment when it was a tort judgment, whereas the settlement agreement was reached later. However, when Fiegl's lien attached, the judgment was on appeal, and a judgment is not final so long as an appeal is pending. (See, e.g., *Estate of Molera* (1972) 23 Cal.App.3d 993, 998.) Thus, when Fiegl's lien attached, it had not yet been finally determined whether Lenders' recovery would be based on breach of contract or tort. That determination was made in the settlement agreement.

8

Fiegl further argues that Lenders' recovery represented settlement proceeds, not insurance proceeds, and thus was not encompassed within the definitions of collateral in Lenders' deed of trust. However, the settlement agreement was based on the breach of an insurance contract, and in the absence of such a contract, there would have been no recovery. The jury expressly found in its special verdict that Partners had "a claim covered under an insurance policy or endorsement" with Stewart Title. Lenders' contractual security interest in such proceeds was vested by the recording of its deed of trust in March 2008, long before Fiegl obtained his lien.

The fact that the insured had to bring a lawsuit to collect the amounts due is irrelevant. *Ziello v. Superior Court* (1995) 36 Cal.App.4th 321, on which Fiegl relies, is not helpful; in that case, a lender argued it was entitled to earthquake insurance proceeds paid to the borrower prelitigation because in the deed of trust the borrower assigned to the lender sums paid or payable "by judgment or settlement." (*Id.* at p. 329.) The court rejected that argument, reasoning that "payment on an insurance contract is neither a judgment nor a settlement; it is simply payment on a contract." (*Ibid.*) The court did not address the converse situation, such as that presented in the instant case, as to whether payment of a judgment to enforce an insurance contract is considered insurance proceeds.

We conclude the trial court did not err in holding that Lenders' recovery against Stewart Title represented insurance proceeds.

**Did the Fund Represent Insurance Proceeds for Losses Sustained in Connection with the Title to the Property Rather Than in Connection with the Land or Improvements?**

Fiegl argues that even if the fund did represent insurance proceeds, such proceeds arose from losses sustained in connection with the title to the property, and were therefore not covered in the provisions of Lenders' deed of trust that granted a security interest in insurance proceeds arising "in connection with the land or improvements." Fiegl argues that the phrase "in connection with" means direct, physical damage to the real property.

Citing *Lick Mill Creek Apartments v. Chicago Title Ins. Co.* (1991) 231 Cal.App.3d 1654 and *Hocking v. Title Ins. & Trust Co.* (1951) 37 Cal.2d 644, 651 Fiegl argues that "[a] title insurance policy insures only the condition of legal title, not the value of the property," and that a title insurance policy is more properly described in terms of indemnity of title. However, the normal measure of damages under a title policy when a defect or lien cannot be removed is the difference between the value of the land or interest without the defect or lien and its value with the defect or lien. (*Native Sun Investment Group v. Ticor Title Ins. Co.* (1987) 189 Cal.App.3d 1265, 1274.)

Fiegl further argues that the title defect occurred before Lenders' deed of trust, and the parties must therefore have intended to exclude Partners' later recovery of insurance settlement proceeds based on that defect. However, Partners granted Lenders a security interest in all of Partners' present and future interest in the categories of collateral. The deed of trust, article I, section 1.01(3), includes as collateral "all present and

10

future . . . proceeds . . . including, but not limited to, . . . all insurance proceeds payable to" Partners. Section 1.01(4) refers to "all proceeds and claims arising on account of any damage to . . . any part of the Land . . . and all causes of action and recoveries for any diminution in the value of the Land." We reject Fiegl's interpretation of the contract.

## DISPOSITION

The judgment is affirmed. Each party shall bear their own costs.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


McKINSTER _____
J.

We concur:


HOLLENHORST _____
Acting P. J.


CODRINGTON _____
J.


11