5/30/25; Opinion on transfer from Supreme Court

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SHAWN AGNONE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>FRANK CHARLES AGNONE II,<br><br>     Defendant;<br><br>KENNETH MADICK,<br><br>     Appellant. | B321252<br><br>Los Angeles County<br>Super. Ct. No. BD659645 |

    APPEAL from an order of the Superior Court of Los Angeles County, Steve Cochran, Judge.  Affirmed.

    Law Office of Jeff Katofsky, Jeff Katofsky and Michael Leff for Appellant.

    Carroll, Kelly, Trotter & Franzen and David P. Pruett for Plaintiff and Respondent.

———————————————

Shawn Agnone subpoenaed third-party witness Kenneth Madick in connection with a marital dissolution action against her former husband Frank Charles Agnone II.[1] After Madick's attorney refused to turn on his webcam or otherwise make himself visible to Shawn's counsel during Madick's remote deposition, Shawn filed a motion to compel compliance with the subpoena and a request for sanctions under provisions of the Civil Discovery Act (Code Civ. Proc., § 2016.010 et seq.) and other statutes governing third-party subpoenas.[2] Madick opposed the motion; however, before Shawn filed her reply brief, she and Frank settled the dissolution action, rendering the motion to compel moot. Shawn withdrew her motion to compel, but argued sanctions were nonetheless warranted to reimburse her for the expenses incurred due to Madick's and his counsel's "gamesmanship during the deposition." The trial court granted the request for sanctions in part, ordering Madick to pay Shawn $9,981.

When we originally considered this matter, we concluded sections 2023.010 and 2023.030 did not independently authorize the trial court to impose monetary sanctions for discovery misuses like those at issue here. Our Supreme Court granted Shawn's petition for review of this decision and deferred further action pending consideration and disposition of a related issue in *City of Los Angeles v. PricewaterhouseCoopers, LLP* (2024)

---

[1] For clarity we refer to Shawn and Frank by their first names.

[2] Statutory references are to the Code of Civil Procedure, unless otherwise designated.

17 Cal.5th 46 (*PwC*).  (*Agnone v. Agnone (Madick)*, review granted Apr. 10, 2024, S284051.)  *PwC* holds a trial court may invoke its independent authority to impose monetary sanctions under sections 2023.010 and 2023.030 when confronted with an "unusual form of discovery abuse" not already addressed by the method-specific sanctions provisions of the Civil Discovery Act. (*PwC,* at pp. 72–74.)  The Supreme Court has now transferred the case back to this court with directions to vacate our original decision and to reconsider the cause in light of *PwC*.  Having done so, we conclude the trial court had authority to impose sanctions against Madick, notwithstanding Shawn's withdrawal of her motion to compel.  We affirm.

## BACKGROUND

At his deposition, Frank disclosed that he had placed thousands of dollars of sports bets with Madick during his marriage to Shawn, mainly in the last five years.  Shawn subsequently served Madick with a deposition subpoena for personal appearance and the production of documents related to Frank's sports bets.  The attached notice specified that the deposition would be conducted "by way of a Virtual Conference Zoom link" and that Madick "and his counsel shall participate using their own computer equipped with a webcam, and with a stable land-line/wired ethernet connection to the Internet."  Madick acknowledged receipt of the subpoena without objection.

Madick appeared for the deposition via webcam.  His attorney, Jeffrey Katofsky, stated his appearance and confirmed he was in the same room as Madick, but refused to turn on his webcam.  Shawn's counsel objected, explaining he could not tell if Katofsky was "making any visual signs" or otherwise coaching Madick "to answer one way or another."  He repeatedly asked

3

Katofsky either to turn on his webcam or to sit next to Madick where they could be seen on the same camera. Katofsky refused each request, stating only, "I am not doing that."; "No. You can go forward with the deposition. We are ready to go forward."; and "Do you have a question for my client?"

After taking a five-minute recess to consider how to proceed (to which Katofsky objected), Shawn's counsel began asking Madick preliminary questions about documents requested in the subpoena. Counsel observed Madick look away from the camera before answering each question. He again conferred with Katofsky, stating his concern that, "every time that I ask a question, your client is looking upward to you for feedback." Shawn's counsel asked Katofsky once again if he would turn on his webcam. Katofsky refused, stating, "Your notice requires my computer to be equipped with a webcam. My computer is equipped with a webcam; so we complied with your notice. . . . Take your deposition. I don't understand it. You know, a normal confident lawyer would go forward and take questions and answers today rather than continue to interrupt counsel and argue with me now for 25 minutes. . . . I am not going to turn on my webcam because I don't need to have my webcam on." Shawn's counsel terminated the deposition.

Shawn moved to compel Madick's appearance in accordance with the terms of the deposition notice and requested sanctions against Madick and Katofsky, jointly and severally, in the sum of $12,904 under sections 1987.1, 1987.2, 2023.010, 2023.030, 2025.450, and 2025.480.

Madick opposed the motion and made his own request for sanctions. He argued Katofsky was not legally required to appear on webcam during his client's remote deposition and,

thus, Shawn had brought the motion to compel in bad faith and without substantial justification.

Shawn filed a reply memorandum, notifying the court that she and Frank had settled their dissolution action. She withdrew her motion to compel Madick's deposition, but argued sanctions were nonetheless warranted for Madick's and Katofsky's defiance of the subpoena and "deposition conduct that constitute[d] misuse of the discovery process." She maintained Katofsky's "gamesmanship during the deposition and his attempted coaching of his client regarding how to respond to questions constitutes misuse of the discovery process and [is] deserving of monetary sanctions" as provided under sections 2023.010 and 2023.030.

The trial court granted the sanctions request in part, ordering Madick alone to pay sanctions totaling $9,981. This timely appeal followed.

## DISCUSSION

Section 2023.030 provides in relevant part: "To the extent authorized by the chapter governing any particular discovery method or any other provision of this title, the court, after notice to any affected party, person, or attorney, and after opportunity for hearing . . . [¶] . . . may impose a monetary sanction ordering that one engaging in the misuse of the discovery process, or any attorney advising that conduct, or both pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct." (§ 2023.030, subd. (a).)

Under section 2023.010, "[m]isuses of the discovery process include, but are not limited to, the following: [¶] (a) Persisting, over objection and without substantial justification, in an attempt to obtain information or materials that are outside

5

the scope of permissible discovery. [¶] (b) Using a discovery method in a manner that does not comply with its specified procedures. [¶] (c) Employing a discovery method in a manner or to an extent that causes unwarranted annoyance, embarrassment, or oppression, or undue burden and expense. [¶] (d) Failing to respond or to submit to an authorized method of discovery. [¶] (e) Making, without substantial justification, an unmeritorious objection to discovery. [¶] (f) Making an evasive response to discovery. [¶] (g) Disobeying a court order to provide discovery. [¶] (h) Making or opposing, unsuccessfully and without substantial justification, a motion to compel or to limit discovery. [¶] (i) Failing to confer in person, by telephone, or by letter with an opposing party or attorney in a reasonable and good faith attempt to resolve informally any dispute concerning discovery, if the section governing a particular discovery motion requires the filing of a declaration stating facts showing that an attempt at informal resolution has been made."

Our Supreme Court granted review in *PwC* "to clarify the scope of a trial court's authority to award monetary sanctions for abuses of the discovery process" and to consider specifically whether a trial court has "the authority to impose monetary sanctions under sections 2023.010 and 2023.030." (*PwC, supra,* 17 Cal.5th at p. 59.) A divided panel of the intermediate appellate court had held (as we did in our original opinion) that "sections 2023.010 and 2023.030 do not independently authorize trial courts to impose monetary sanctions for discovery misuse, but instead supply definitions relevant to other provisions of the Civil Discovery Act (Act) that authorize imposing sanctions for specified abuses of enumerated discovery methods." (*Id.* at p. 58, citing *City of Los Angeles v. PricewaterhouseCoopers, LLP*

(2022) 84 Cal.App.5th 466, 504 (*City of L.A.*).) The appellate court majority had reasoned that, "while section 2023.030 contains language stating that courts '*may impose*' various types of sanctions (including monetary sanctions) for discovery misuse," this was not an independent grant of authority because "the provision also specifies that courts may impose such sanctions only '*[t]o the extent authorized by*' other provisions of the Act." (*PwC,* at p. 58, italics added, citing *City of L.A.,* at p. 498.) Thus, the majority had concluded a party seeking monetary sanctions for discovery misuse "must rely on the discovery-method-specific sanctions provisions of the Civil Discovery Act *alone*." (*PwC,* at p. 59, italics added.) Our Supreme Court rejected this reasoning in *PwC*, holding a trial court may invoke its "independent authority" to impose monetary sanctions under sections 2023.010 and 2023.030 when confronted with discovery misconduct "not already addressed" by a method-specific sanctions provision. (*PwC*, at p. 74.)[3]

In resolving what it deemed to be a "textual ambiguity" in section 2023.030's use of the phrases " '[t]he court may impose a monetary sanction' " and " '[t]o the extent authorized by . . . any other provision of this title,' " our Supreme Court looked to "the Legislature's overarching purposes in enacting the sanctions

---

[3] In his appellate briefs, Madick relied exclusively upon the appellate court's holding in *City of L.A.* to argue the trial court had abused its discretion to the extent it imposed sanctions under sections 2023.010 and 2023.030. After our Supreme Court's grant of review in this case and its holding in *PwC*, this plainly is no longer a viable argument for reversal of the sanctions order.

provisions of the Civil Discovery Act" for "dispositive" guidance in construing the statutes. (*PwC, supra,* 17 Cal.5th at pp. 65, 68–69, 71, italics omitted.) As our high court explained, when the Legislature enacted the Civil Discovery Act it "was aware of *gaps in the preexisting scheme of statutory sanctions*, and it was also aware that some courts had invoked their inherent authority to fill those gaps." (*Id.* at p. 73, italics added.) Thus, one of the "central purposes" of the legislation was "to give courts the tools necessary to respond to those abuses to ensure that civil discovery can serve its central truth-seeking function." (*Ibid.*) Against "this backdrop," the Legislature's choice to provide that a court " 'may impose' sanctions for discovery misuse" was plainly "deliberate" and readily reconcilable with the limiting language in the statutory text. (*Id.* at p. 74.) Our Supreme Court explained:

> "As part of its concerted response to known deficiencies in the prior discovery sanctions statute, the Legislature gave trial courts a statutory basis for exercising authority to address egregious forms of misconduct *not addressed elsewhere in the Act*. It seems, by contrast, unlikely that a Legislature concerned with stemming the tide of discovery abuse would have consigned courts confronting patterns of egregious abuse to the choice the City's [and the *City of L.A.* majority's] position would offer them: either attempt to fit the component parts of the pattern into individual method-specific sanctions rulings, or else rely purely on their inherent authority to control

the litigation, with no statutory guidelines relevant to that exercise." (*Ibid.*, italics added.) In sum, *PwC* holds a trial court "may invoke its independent authority to impose sanctions under sections 2023.010 and 2023.030 only when confronted with an unusual form of discovery abuse, or a pattern of abuse, not already addressed by a relevant sanctions provision." (*Ibid.*)

Madick argues *PwC* is not controlling because, in his telling, the case "deals solely" with whether sections 2023.010 and 2023.030 allow for monetary sanctions "*in extreme circumstances*." (Italics added.) In contrast to the "extreme" conduct of the sanctioned party in *PwC*, Madick insists he "did nothing wrong" here. He argues his counsel "correctly" exercised the "right not to be on camera during the remote deposition," and this conduct "did not reach the level required" under *PwC* to authorize the imposition of sanctions. Notwithstanding the trial court's sanctions order, Madick also maintains he "was not a party to any inappropriate conduct and the trial court did not find such."

Madick's arguments are unconvincing. First, although the misconduct in *PwC* was extreme, our high court's reasoning did not turn on the underlying facts of the case. Rather, *PwC* was decided as "purely a question of statutory interpretation" —a *legal* issue that the court reviewed "de novo," focusing specifically on whether "courts may rely on the general authority conferred in section 2023.030 to impose sanctions for *any* '[m]isuse[ ] of the discovery process,' as that term is defined in section 2023.010." (*PwC, supra,* 17 Cal.5th at pp. 64–65, italics added.) Nothing in the decision suggests it is limited to extreme misconduct or the pattern of discovery abuse perpetrated

by the sanctioned party there.  On the contrary, *PwC* holds a trial court may invoke its independent authority to impose monetary sanctions under the statutes whenever "confronted with an *unusual form of discovery abuse, or* a pattern of abuse, not already addressed by a relevant sanctions provision." (*Id*. at p. 74, italics added.)  This statutory construction, the court explained, follows from the fact that one of the Civil Discovery Act's "central purposes" was to "fill those gaps" in "the preexisting scheme of statutory sanctions" so as "to give courts the tools necessary to respond to those abuses to ensure that civil discovery can serve its central truth-seeking function." (*Id*. at p. 73; see *id*. at p. 71.)  This gap-filling purpose would not be meaningfully achieved if the *PwC* holding was limited to only "extreme circumstances," as Madick urges.

Madick's contention that he "did nothing wrong" is also unpersuasive.  He insists his attorney Katofsky had the right to refuse to appear on camera under California Rules of Court, rule 3.1010, because the rule authorizes anyone other than the deponent, including an "attorney of record," to "appear and participate in an oral deposition by telephone, videoconference, or other remote electronic means," provided certain conditions are met.  (Cal. Rules of Court, rule 3.1010(b).)  But this argument ignores the first part of rule 3.1010, which provides that an "attorney of record *may*"—but need not—"be physically present at the deposition at the location of the deponent."  (*Id*., rule 3.1010(a)(3), italics added; see also § 2025.310, subd. (b) ["any party or attorney of record may, but is not required to, be physically present at the deposition at the location of the deponent"].)  Reading the parts of the rule together—as we must —it is apparent that the second part of rule 3.1010 was meant

10

to allow (and specify conditions for) the deponent's attorney to represent his client "by telephone, videoconference, or other remote electronic means" when the attorney elects—under the rule's first part—*not* to be "physically present at the deposition at the location of the deponent." (Cal. Rules of Court, rule 3.1010(a)(3), (b).) Contrary to Madick's contention, the rule cannot reasonably be read as a blanket authorization for a deponent's attorney to participate by audio-only means while physically present with his client under circumstances where the attorney could surreptitiously coach the deponent outside opposing counsel's view.

Coaching a deponent is, of course, a misuse of the discovery process as defined in section 2023.010 that authorizes the imposition of sanctions under section 2023.030. (See *Tucker v. Pacific Bell Mobile Services* (2010) 186 Cal.App.4th 1548, 1561–1562 (*Tucker*) [affirming sanctions under section 2023.030 where counsel "coached" deponent "when he put a note in front of her and told her not to divulge the contents of the note"]; see also *PwC, supra,* 17 Cal.5th at pp. 63–64 & fn. 2 [citing *Tucker* among cases where courts correctly relied upon sections 2023.010 and 2023.030 "as sources of authority to impose sanctions for discovery misuse"].) Madick does not dispute this, but he argues there was "no such evidence" of coaching in this case.

Madick's argument misses the point. Shawn moved for sanctions on the ground that Madick's and Katofsky's "gamesmanship" made it impossible to tell—and thus impossible to develop evidence of—whether Katofsky was attempting to coach Madick during the remote deposition. The record shows Shawn's counsel repeatedly asked Katofsky to make himself visible on camera, explaining to Katofsky that counsel could not

11

go forward with the deposition because, "every time that I ask a question, your client is looking upward to you for feedback." Katofsky confirmed his computer was equipped with a webcam —as required under the subpoena and deposition notice that Madick acknowledged without objection—but he refused to turn on the webcam without any justification other than, "I don't need to have my webcam on." Based on this record, we have no trouble concluding the trial court reasonably exercised its discretion to impose sanctions for this "unusual form of discovery abuse" that plainly frustrated the deposition's "truth-seeking function." (*PwC, supra,* 17 Cal.5th at pp. 73–74.)

Finally, Madick argues sections 2023.010 and 2023.030 cannot be the basis for the sanctions order because "the trial court did not make a finding" that he violated these statutes. The argument has no merit. We review the trial court's order imposing discovery sanctions under the deferential abuse of discretion standard. (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1435.) "[E]ven where there are no express findings, we must review the trial court's exercise of discretion based on *implied findings* that are supported by substantial evidence." (*Federal Home Loan Mortgage Corp. v. La Conchita Ranch Co.* (1998) 68 Cal.App.4th 856, 860, italics added (*Federal Home Loan*).) In determining whether the evidence supports an implied finding, we review the record in the light most favorable to the trial court's order, drawing all reasonable inferences to support the court's exercise of discretion. (*Ibid.*) The burden rests with the party challenging the order to establish an abuse of discretion. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331 (*Blank*), citing *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

Madick has not carried his burden on appeal. Shawn moved for sanctions against Madick and Katofsky, jointly and severally, under the Civil Discovery Act's deposition-specific sanctions provisions (§§ 2025.450 and 2025.480) and under the general sanctions authority set forth in sections 2023.010 and 2023.030. However, after settling her dissolution action and withdrawing the motion to compel, Shawn limited her argument for sanctions in her reply memorandum to *only* sections 2023.010 and 2023.030. Although the trial court's written order did not expressly find these statutes authorized the imposition of sanctions against Madick, we may (and, indeed, must) readily imply this finding based on the abusive conduct evidenced in the deposition transcript. (See *Federal Home Loan, supra,* 68 Cal.App.4th at p. 860; see also, e.g., *Tucker, supra,* 186 Cal.App.4th at pp. 1561–1562.) For his part, Madick has not provided a transcript of the sanctions hearing or any other record conclusively refuting this implied finding.[4] In the absence of a record clearly establishing error, we must affirm the trial court's sanctions order. (See *Blank, supra,* 39 Cal.3d at p. 331; *Federal Home Loan,* at p. 860.)

---

[4] Despite now challenging the factual basis for the trial court's ruling, Madick argued in his appellate briefs that there was no need to supply a reporter's transcript because his appeal raised a pure issue of law—namely, that "the trial court had no discretion to independently award sanctions pursuant to Code of Civil Procedure sections 2023.010 and 2023.030." As we have discussed, that argument cannot serve as a basis for reversal now that our Supreme Court has clarified the scope of a trial court's authority to award monetary sanctions under these statutes. (See *PwC, supra,* 17 Cal.5th at pp. 72–74.)

13

## DISPOSITION

The order imposing monetary sanctions is affirmed. Shawn Agnone is entitled to her costs on appeal.

**CERTIFIED FOR PUBLICATION**


EGERTON, J.

We concur:



EDMON, P. J.



ADAMS, J.