[No. B121125. Second Dist., Div. Six. Dec. 18, 1998.]

FEDERAL HOME LOAN MORTGAGE CORPORATION, Plaintiff,
Cross-defendant and Respondent, v.
LA CONCHITA RANCH COMPANY et al., Defendants,
Cross-complainants and Appellants.

**COUNSEL**

Ropers, Majeski, Kohn & Bentley, Frank T. Sabaitis, Andrew D. Castricone and Kelly C. Franks for Defendants, Cross-complainants and Appellants.

Thorsnes, Bartolotta, McGuire & Padilla, John F. McGuire, Jr., and Michael D. Singer for Plaintiff, Cross-defendant and Respondent.

**OPINION**

**GILBERT, J.**—Where no conflict exists between an attorney's clients in a lawsuit, opposing counsel may not create a conflict through a meritless cross-complaint.

This is an appeal from an order denying a motion to disqualify an opposing party's counsel. The trial court did not abuse its· discretion in denying the motion. We affirm.

## FACTS

Residents of the Town of La Conchita must have felt like unwilling players in a disaster movie. Although the landslide in. 1995 did not envelop the town, it destroyed nine homes and impaired the value of the other homes. La Conchita property owners blamed the irrigation practices of the La Conchita Ranch Company (hereinafter the Ranch). Owners of 71 properties filed suit against the Ranch. (Bateman v. La Conchita Ranch Co. (Super. Ct. Ventura County, 1995, No. CIV 156906) (hereinafter the Bateman action).)

The law firm of Thorsnes, Bartolotta, McGuire & Padilla (TBMP) represented the plaintiffs in the Bateman action. The Federal Home Loan Mortgage Corporation (FHLMC) held mortgages on five of the seventy-one Bateman properties. FHLMC and the owners of the five properties entered into litigation participation agreements. The agreements allowed FHLMC to become a named plaintiff in the Bateman action. The agreements provided in part, "FHLMC hereby agrees that HOMEOWNER has no legal, financial or any

other type of liability for any loss, demand, judgment, debt, or any other claim by FHLMC of any kind, including those regarding the property."

FHLMC eventually decided not to join in the Bateman action, but to pursue its own action against the Ranch for impairment of security. FHLMC wanted TBMP to represent it. TBMP obtained waivers from its clients acknowledging and waiving potential conflicts of interest which could arise from the concurrent representation.

FHLMC filed its own action for the negligent impairment of its security in the five properties. The owners of the five properties filed supplemental responses to interrogatories in the Bateman action that removed from their claim for damages the amount of damages claimed by FHLMC. During settlement discussions in the Bateman action, FHLMC dismissed its suit without prejudice.

Prior to settlement of the Bateman action, FHLMC refiled its action against the Ranch for impairment of security. TBMP again represented FHLMC.

The parties reached a settlement agreement in the Bateman action a few days after FHLMC refiled its action. The agreement required that the parties keep the amount of the settlement confidential. In the agreement the home-owners released the Ranch from liability for any and all claims which were or could have been raised in the Bateman action. The agreement, however, provided in part, "This Agreement specifically excludes claims for impair-ment of security brought by Federal Home Loan Mortgage Corporation in Ventura County Superior Court Case No. CIV 164601. Plaintiffs, DAN ALVIS, PAUL BRODEUR, MARY KAY BRODEUR, GEORGE CAPUTO, CHRIS CAPUTO, KATHERINE RADDICK, ROBERT RYAN, MAUREEN RYAN, HARRY TALBOT, THOMAS TALBOT AND THOMAS AND LOLINI TEAS specifically do not settle any claims which may or have been raised by these plaintiffs' mortgage lenders or real property loan owners, including, but not limited to, Federal Home Loan Mortgage Corporation (Ventura County Superior Court Case No. 164601)."

After the settlement of the Bateman action, the Ranch cross-complained in FHLMC's action against it. The cross-complaint was against the owners of the five parcels on which FHLMC held mortgages. The cross-complaint alleged, among other matters, that the damages sought by FHLMC had already been paid to the homeowners in the Bateman action settlement. The cross-complaint requested equitable indemnity from the homeowners.

TBMP agreed to represent the cross-defendant homeowners. It again obtained waivers from its clients acknowledging and waiving potential conflicts of interest.

The Ranch moved for an order disqualifying TBMP from representing FHLMC. The Ranch alleged that TBMP had an actual conflict of interest representing both FHLMC and the homeowners. The trial court denied the motion.

## DISCUSSION

### I

■ The denial of an order to disqualify counsel is appealable. (*Metro-Goldwyn-Mayer, Inc.* v. *Tracinda Corp.* (1995) 36 Cal.App.4th 1832, 1838 [43 Cal.Rptr.2d 327].) ■ We review the order for an abuse of discretion. (*Cal Pak Delivery, Inc.* v. *United Parcel Service, Inc.* (1997) 52 Cal.App.4th 1, 8-9 [60 Cal.Rptr.2d 207].) The order is subject to reversal only when there is no reasonable basis for the trial court's decision. (*Id.*, at p. 9.)

The Ranch relies on *Cho* v. *Superior Court* (1995) 39 Cal.App.4th 113, 119 [45 Cal.Rptr.2d 863], for the proposition that in the absence of express findings on a factual dispute, the order denying disqualification is subject to independent review. But the better rule, which is consistent with the usual practice on appeal, is to imply findings in support of the order. Thus, even where there are no express findings, we must review the trial court's exercise of discretion based on implied findings that are supported by substantial evidence. (*In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 585 [283 Cal.Rptr. 732].)

In viewing the evidence, we look only to the evidence supporting the prevailing party. (*GHK Associates* v. *Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 872 [274 Cal.Rptr. 168].) We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. (*Ibid.*) Where the trial court has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 370, pp. 420-421.)

### II

■ The Ranch contends that FHLMC, as mortgagee, and the homeowners, as mortgagors, have directly adverse interests in the litigation. The

Ranch relies on *Flatt* v. *Superior Court* (1994) 9 Cal.4th 275, 279 [36 Cal.Rptr.2d 537, 885 P.2d 950], for the proposition that an attorney has a "mandatory and unwaivable duty" not to represent two clients in the same action whose interests are directly adverse.

The Ranch's contention that the interests of FHLMC and its mortgagors are directly adverse is based on the theory that FHLMC has a lien on its mortgagors' settlement proceeds. The Ranch relies on *American Sav. & Loan Assn.* v. *Leeds* (1968) 68 Cal.2d 611 [68 Cal.Rptr. 453, 440 P.2d 933]. There the court stated: "When a third person tortiously damages [secured real] property, both the mortgagor and mortgagee may sue the third party tortfeasor. If the mortgagor sues first, he may recover the total amount of damage to the property, but the fund recovered is subject to the lien of the mortgagee to the amount that his security has been damaged. [Citations.]" (*Id.*, at p. 614, fn. 2.)

But *American Sav.* also stands for the proposition that where a mortgagor's settlement with the tortfeasor does not include amounts for damages to the mortgagee's security, the mortgagee has no claim to the settlement proceeds. (*American Sav. & Loan Assn.* v. *Leeds, supra,* 68 Cal.2d at pp. 616-617; 4 Miller & Starr, Cal. Real Estate (2d ed. 1989) § 9:52, p. 141.) Here the settlement agreement in the Bateman action settles all claims of the homeowners, but "specifically excludes claims for impairment of security brought by [FHLMC] . . . ."

The Ranch insists, however, that the settlement does not exclude the homeowners' own separate claim for impairment of security, only that of FHLMC. The Ranch misreads *American Sav.* Nothing in the opinion gives the homeowner a separate claim for impairment of security. The homeowner has no security interest in his own property. The homeowner does have a claim for damage to his property. Where the homeowner recovers for the "total amount of damage to the property," the mortgagee has a lien on the proceeds because the moneys recovered " '. . . stand now in the place and stead of the original uninjured mortgaged premises.' [Citation.]" (*American Sav. & Loan Assn.* v. *Leeds, supra,* 68 Cal.2d at p. 614, fn. 2.)

Where, as here, however, the settlement expressly excludes the mortgagee's claim for impairment of security, the settlement proceeds are not a substitute for the original uninjured mortgaged premises. Nor can the mortgagee claim "that [the tortfeasor] had mistakenly paid money to the [homeowner] that properly should have been paid to the [mortgagee]." (*American Sav. & Loan Assn.* v. *Leeds, supra,* 68 Cal.2d at p. 616.)

FHLMC has no lien on the proceeds of the homeowner's settlement and it claims none. To the contrary, FHLMC is denying that any such lien exists. It is making no claim on the homeowners whatsoever.

The Ranch believes FHLMC's concession that it has no lien was unnecessary and by itself shows that a conflict exists. But it follows from what we have said that the concession was correct as a matter of law and shows no conflict of interest.

Even had FHLMC waived a valuable right in order to avoid a conflict, we would not be persuaded that the trial court abused its discretion in denying the motion to disqualify. FHLMC is a federal corporation. (12 U.S.C. § 1452(a).) Its board of directors is composed of members of the Federal Home Loan Bank Board. (*Ibid.*) It is highly sophisticated and fully capable of determining where its best interests lie. If it decides to waive a right or concede an issue in order to be able to retain counsel of its choice, we know of no policy that would prevent it from doing so. The Ranch does not suggest the homeowners would be prejudiced by a concession that FHLMC has no lien or other claim against the settlement proceeds.

In the absence of an actual conflict between an opposing attorney's clients, a party should not be able to create one through the simple expediency of filing a cross-complaint. Any other rule would give a party the power to reject its opponent's choice of counsel. Here the trial court was justified in concluding the cross-complaint has no chance of succeeding on the merits. It cannot create a conflict. Nor can such a cross-complaint create the appearance of impropriety that would compel disqualification.

The Ranch claims there is an appearance of impropriety because dual representation of the mortgagor and mortgagee might affect the ability of the Ranch and FHLMC to explore settlement options. The only such settlement option the Ranch can suggest is the possibility of purchasing the mortgages from FHLMC.

But the trial court did not abuse its discretion in refusing to disqualify TBMP simply because there is some hypothetical possibility the settlement offer might include the transfer of the mortgages to the Ranch. The Ranch makes no effort to show such a settlement is a real possibility or that the homeowners would suffer any actual harm if such a settlement were made. Whether the homeowners would suffer any actual harm would depend on

such factors as whether they have any personal liability and whether the land has any substantial value.[1]

The order denying the motion to disqualify is affirmed. Costs are awarded to FHLMC.

Stone (S. J.), P. J., and Coffee, J., concurred.

---

[1]The Ranch's motion for judicial notice of a complaint for declaratory relief filed by the homeowners in a separate action is denied as irrelevant to this appeal.