Filed 11/6/25  Adham v. Edwards CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

|  |  |
|---|---|
| DINA ADHAM et al., | B340483 c/w B342461 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. Nos. 22STPB08269 & 22VECV01429) |
| v. | |
| CHRISTI EDWARDS et al., | |
| Defendants and Appellants. | |

APPEALS from orders of the Superior Court of Los Angeles County, Stephanie C. Santoro and Valerie Salkin, Judges. Reversed.

Law Offices of Christopher G. Hook and Chrisopher G. Hook for Defendants and Appellants.

Moravec, Varga & Mooney, Henry J. Moravec III; Gavrilov & Brooks and Bradley E. Jewett for Plaintiffs and Respondents.

\* \* \* \* \* \*

These consolidated appeals arise out of acrimonious litigation between an elderly man's adult children from his first marriage on the one hand, and the man's second wife and business associate on the other. The children moved to disqualify the lawyer who represented both the second wife and the business associate in a conservatorship lawsuit and a civil lawsuit, and the trial courts granted the motions. This was error, as the children lacked standing to seek disqualification. We accordingly reverse.

## FACTS AND PROCEDURAL BACKGROUND

I.     Facts

A.     *The family*

In 1980, Mohamed Adham (Mohamed)[1] married Azza Adham (Azza). They had two daughters together, Dina Adham (Dina) and Ronda Adham Zulich (Ronda).

In October 2005, the couple created the Adham Family Trust (the trust), and one of the trust's assets is an investment account held at TD Ameritrade (the investment account).

Mohamed also owns an individual retirement account at TD Ameritrade (the IRA).

After Azza passed away in December 2005, Mohamed married his childhood sweetheart, Mervat El Leissy (wife).

---

[1]     Because several of the individuals involved in these cases share the same surname, we use their first names to avoid confusion. We mean no disrespect.

**B.** *Mohamed's accounting business*

For decades, Mohamed worked out of his home as an accountant through his business, M. Adham CPA. Although the business was operated by Mohamed and without wife's involvement, the couple's 2019 and 2020 tax returns listed both Mohamed *and wife* as the business's "proprietors."

In 2006, Mohamed hired Christi Edwards (Edwards) to "assist" him with the business. Over the years, Edwards went from being an employee to more of a "business partner" and, eventually, Mohamed's and Edwards' relationship grew into more of a father-daughter type relationship.

When Mohamed lost a significant amount of his personal savings during the 2008 economic recession, Mohamed took Edwards' suggestion to invest in a certain stock and that stock turned out to be lucrative. To express his gratitude and because they both "enjoyed investing," Mohamed and Edwards agreed that Mohamed would invest a portion of Edwards' employment compensation and that Mohamed would manage Edwards' investment in the investment account. In September 2015, Mohamed executed a document stating that Edwards "can take . . . out" the $125,000 she gained from her investment from Mohamed's "stock accounts" "whenever she decides to."

By September 2020, Mohamed was planning to wind down his accounting practice. Given Edwards' "dedication" to the practice and their "close personal friendship," Mohamed decided to hand over his practice to Edwards. Mohamed and wife signed a document on September 12, 2020, stating that "should [Mohamed] become incapacitated or upon [his] passing," he "wish[es] to give [his] Client book, goodwill, and all assets relating to [his] business M. Adham CPA to [] Edwards."

3

## C.     *Mohamed's deteriorating health*

In 2016, Mohamed suffered two strokes that left him with limited mobility.  He suffered another stroke in 2018 that resulted in "cognitive dysfunction and the inability to ambulate without close supervision."  In 2021, he fell and needed a total hip replacement.  In November 2021, Mohamed was admitted to the hospital "after choking and nearly dying."  The hospital's discharge notes stated that Mohamed displayed "cognitive impairment and lack of decision making capability."

By February 2023, Mohamed was experiencing "moderate dementia," appeared "foggy," and had other conditions that prevented him "from engaging in basic self-care or management of his business and affairs."

## D.     *The financial transactions*

Three sets of financial transactions relating to Mohamed's assets are pertinent here.

### 1.     *Movement of funds from inheritance*

When Mohamed's sister died in 2019, he inherited around $1,314,430.  Mohamed's daughters, Dina and Ronda, contend that wife diverted the inherited funds to bank accounts in Australia, where wife's daughter from wife's earlier marriage resides.  Wife contends that she and Mohamed had agreed to use the inheritance to retire to Australia, although wife has given inconsistent accountings of the inherited funds.

### 2.     *Movement of funds out of the IRA*

In November 2021, the address listed on Mohamed's IRA at TD Ameritrade "mysteriously" changed from Mohamed's home address to Edwards' home address.  Although wife initially asserted *Edwards* had changed the address, wife later claimed that *she* had done so.  Edwards claimed that it was customary,

4

when Mohamed traveled overseas to Australia with wife, for the couple's bills to be sent to Edwards' home address.

Two checks for distributions from the IRA totaling $12,595.67 were sent to Edwards' address on December 9, 2021 and February 9, 2022. Mohamed's business stamp was used to endorse both checks, the checks were then deposited into Mohamed's business checking account, and checks from that account bearing Mohamed's signature were subsequently issued to Edwards' then-boyfriend, now-husband Richard Day (Day).

### 3. *Movement of funds out of the investment account*

From December 2021 through June 2022, Edwards initiated five withdrawals by check totaling $126,000 from the investment account. Mohamed's business stamp was used to endorse the checks, the checks were deposited in his business checking account, and checks from that account were subsequently issued to Edwards' mother or to Day to pay off Edwards' credit cards and debts. Although wife originally claimed she had no knowledge of these withdrawals, she later claimed to have instructed Edwards to close out the investment account. Edwards asserted that she decided to withdraw the $125,000 investment that Mohamed had been holding for her so she could pay for her wedding to Day.

## II. Procedural Background[2]

Dina and Ronda initiated conservatorship and civil proceedings almost simultaneously and although the proceedings

---

[2] The proceedings we discussed are merely a subset of the contentious and protracted litigation between the parties. We summarize only those filings and proceedings necessary to resolve the issues on appeal.

5

were litigated concurrently, we discuss them here separately. Pertinent to these appeals is attorney Christopher Hook's (Hook) representation of wife, Edwards, and Day in the conservatorship and civil proceedings.

### A. *Conservatorship litigation*

#### 1. *Petition to appoint conservators*

Upon discovering the financial transactions discussed above, Dina filed a petition on August 19, 2022, to (1) have herself and Ronda appointed as conservators of Mohamed's person and (2) have herself appointed as conservator of Mohamed's estate. The petition alleges that wife and Edwards had been working "in conjunction . . . to deplete [Mohamed's] bank accounts" and that wife "was aware of [Edwards'] fraud."

Wife and Edwards both objected to the petition, urging the probate court to appoint wife as conservator instead.[3] At that time, Edwards was represented by attorney Hook. Wife was initially represented by different counsel, but then Hook became her co-counsel and, in August 2023, her sole counsel. Hook ceased representing wife on October 19, 2023; at that time, wife became self-represented. Hook has never represented Mohamed, Dina, or Ronda.

In June 2023, the probate court appointed Dina temporary conservator over Mohamed, and, in December 2023, issued an order permanently appointing Dina and Ronda conservators over Mohamed's person and Dina conservator over Mohamed's estate.

---

[3]     Wife had filed her own competing petition to be appointed Mohamed's conservator, but later abandoned that petition.

6

2.    *Petitions to recover property*

a.    Against Edwards and Day

In August 2023, Dina—acting as temporary conservator—filed a petition against Edwards and Day to recover the $12,595.67 transferred out of the IRA, and also sought a penalty for the allegedly wrongful taking.  Edwards and Day, represented by attorney Hook, filed an objection to the petition on May 6, 2024.  In July 2025 (and hence, while this appeal was pending),[4] the probate court denied Dina's petition after finding that she had "fail[ed] to show that [Edwards' and Day's] taking of the monies [from the IRA] was wrongful" because "it is just as reasonable to infer" that Mohamed had "authorized [] Edwards to take the monies and to use them in a manner she saw fit."

b.    Against wife

Dina—again, acting as temporary conservator—also filed a petition against wife in October 2023 to recover the funds Mohamed inherited, and sought a penalty for the allegedly wrongful taking.[5]  When wife became self-represented, the probate court granted her additional time to object to the petition; she did not file any objection.  In July 2024, the probate court ruled that wife "took, concealed and disposed of" $739,990 of the inheritance funds while Mohamed was incapacitated, and further imposed a penalty of double damages in the amount of $1,479,980.

---

[4]    We grant Edwards' and Day's request to take judicial notice of this order.  (Evid. Code, §§ 452, subd. (c), 459.)

[5]    The probate court had previously issued an interim order requiring wife to turn over the inheritance funds; wife appealed that order, but her appeal was dismissed on default.

7

### 3. *Motion to disqualify attorney Hook*
#### a. Representation of wife

On September 1, 2023, just days after Hook become wife's sole counsel, Dina filed a motion to disqualify Hook from representing wife in the conservatorship litigation.  In her motion, Dina alleged that Hook's representation of Edwards and wife posed an "irreconcilable conflict" because, as pertinent here,[6] Hook had threatened to sue Mohamed's business for wage and hour violations, such that any verdict for Edwards would impose liability upon wife as a co-proprietor of that business.

After Hook substituted out as counsel for wife in October 2023, wife represented herself in opposing the motion.  In support of wife's opposition, both wife and Edwards declared that there was no conflict between them.  Specifically, wife stated that she "do[es] not believe that [] Edwards stole any money from Mohamed [], his business, or the [t]rust," and Edwards stated that she "do[es] not have any intention of filing an 'employment law' or any other type of lawsuit against [Mohamed]."  They also both declared that, in March 2023, they had "signed a written conflict of interest waiver regarding [attorney] Hook's joint representation" of wife, Edwards, and Day, although the copies of the signed waiver attached to their declarations were completely redacted except for their signatures and the title of the document ("Disclosure Letter and Client Consent to Joint Representations/Conflict Waiver").

On March 14, 2024, the probate court granted Dina's motion to disqualify Hook from representing wife in the future.

---

[6] We do not recount the other bases for Dina's motion because they were not cited by the probate court and are not raised in these appeals.

The court stated, without explanation, that Dina "has standing to bring" the disqualification motion. The court ruled that, even though Hook no longer represents wife in the conservatorship litigation, Hook "currently represents" Edwards in a parallel civil lawsuit by Mohamed's estate against Edwards (which is discussed below). "Given Edwards' direct conflict of interest in the estate of [Mohamed], to which [wife] holds an interest in as a spouse with community property interests," the court reasoned, "it is a direct conflict of interest for counsel Hook to represent both Edwards and [wife]."

Wife did not appeal this disqualification ruling.

b.      Representation of Edwards and Day

On June 6, 2024, after Hook filed Edwards' and Day's objection to Dina's petition for recovery of funds from the IRA, Dina moved to disqualify Hook from representing Edwards and Day in the conservatorship litigation. In her motion, Dina alleged that Hook's representation of Edwards/Day and wife posed a conflict because, as pertinent here, (1) Edwards had threatened to sue Mohamed's business for wage and hour violations (as noted above), and (2) Dina's allegation that Edwards and Day had stolen funds from the IRA put them at odds with wife, because wife would benefit (as wife had implicitly indicated she had an interest in that account)—but Edwards and Day would be harmed—if those funds were found to be stolen and ordered returned to the trust.

Following further briefing, the probate court ruled on July 2, 2024 that Hook was also disqualified from representing Edwards and Day in the conservatorship litigation. The court once again stated, without explanation, that Dina "has standing to bring the motion." The court found there to be "a direct

9

conflict of interest between" wife and Edwards/Day because wife, "as a spouse of Mohamed [], has a community interest in his estate from which [Edwards/Day] are alleged to have taken funds."[7] Although Hook was no longer representing wife in the conservatorship litigation, the court ruled that it would still "be a conflict of interest for [] Hook to continue his representation of [Edwards/Day] given his knowledge of and possession of" communications with wife acquired during the window of time when he represented her as well as during his current representation of her in the civil litigation.

Edwards and Day appeal the disqualification ruling.

## B. *Civil litigation*

### 1. *Pleadings*

On September 28, 2022, shortly after Dina filed the conservatorship petition but before filing the petition for recovery of property, Dina and Ronda—acting as co-trustees of the trust—initiated a civil action. In the operative first amended complaint, the trust sued wife, Edwards, Day, and Edwards' mother; the trust asserted causes of action for conversion, civil conspiracy, and receipt of stolen property in violation of Penal Code section 496 based on Edwards' alleged embezzlement of $126,000 from the investment account. Edwards filed a cross-complaint against Dina and Ronda, individually and as co-trustees, asserting causes

---

[7] We grant Edwards' and Day's request for judicial notice of the judgment of dissolution of marriage—initiated by Dina on Mohamed's behalf and entered in July 2025 while this appeal was pending—in which Mohamed's IRA was found to be his separate property.

of action for various business torts based on Dina and Ronda sending disparaging messages to Edwards' accounting clients.[8]

Hook represented wife, as well as Edwards and Day, in the civil litigation.[9]

### 2. *Motions to disqualify attorney Hook*

#### a. Initial motion to disqualify

On September 6, 2023, and just days after they moved to disqualify Hook from representing wife in the conservatorship litigation, Dina and Ronda filed a motion to disqualify Hook from representing *any* party in the civil litigation. In their motion, Dina and Ronda alleged that Hook's joint representation of Edwards and Day on the one hand, and wife on the other, posed an "irreconcilable conflict" because (1) Hook had threatened to sue Mohamed's business for wage and hour law violations, such that any verdict for Edwards would impose liability upon wife as a co-proprietor of that business (as alleged in the disqualification motion in the probate litigation), (2) Hook would be a witness in any such wage and hour law litigation because, when Hook helped wife (who is elderly) physically move Mohamed's file cabinets containing his accounting business records, Hook must

---

[8] The operative complaint was filed after the parties litigated an anti-SLAPP motion to the cross-complaint; the trial court denied that motion.

The parties had also litigated a separate matter regarding a petition for an elder abuse restraining order protecting Mohamed from Edwards, but that petition was discharged when the parties reached an informal agreement.

[9] The record does not disclose whether Hook also represents Edwards' mother, although she is not a signatory to the conflict waiver.

have rummaged through them and found documents pertinent to wage-and-hour claims, (3) Hook unethically communicated with wife before wife retained him as counsel and while wife was represented by other counsel, and (4) wife previously characterized Edwards as "dangerous."[10]

Following further briefing, the trial court on February 15, 2024—which was months before any ruling on the disqualification motions in the probate litigation—issued a detailed ruling denying the motion.[11]  As a threshold matter, the court ruled that Dina and Ronda did not have standing to seek Hook's disqualification because they, as persons who were not Hook's clients, did not themselves "stand to suffer harm" from Hook's joint representation of Edwards and Day as well as wife, and because their "generalized concern regarding perceived impropriety" was insufficient to confer standing.  The trial court went on to conclude that Hook's representation of Edwards/Day and wife did not present a conflict because (1) "[a]ny potential conflict" between Edwards and wife was "at least partially speculative" because Edwards had disclaimed any intent to pursue employment-related litigation; (2) there were "insufficient facts or reasoning to show that" Hook would be a witness in any such litigation because "[t]here are many sources of information from which [Edwards] and, by extension, [] Hook might have

---

[10]     The second and third grounds had also been raised in the motion to disqualify Hook from representing wife in the conservatorship litigation, but, as noted above, the probate court did not address those grounds in its ruling and they are not at issue in these appeals.

[11]     Dina and Ronda appealed the denial, but their appeal was dismissed on default.

obtained basic information . . . that could support potential wage and hour claims"; (3) Hook did not improperly communicate with wife because the evidence showed any communication between Hook and wife came after Hook had wife's and her former counsel's permission for such communication; and (4) wife's description of Edwards as "dangerous" had been taken "out of context." Finally, the court ruled that even if Hook's dual representation had presented a conflict, Edwards, Day and wife had each executed a valid conflict waiver.

b.      Renewed motion to disqualify

After the probate court issued its disqualification rulings, Dina and Ronda on July 15, 2024, filed a second motion to disqualify Hook in the civil litigation "based on a new conflict"— namely, that Hook was representing Edwards/Day against the petition to recover funds from the IRA in the conservatorship litigation, which allegedly put him in a conflict with wife, who held a community property interest in the IRA.

Following further briefing, the trial court issued an order on September 12, 2024 reversing its prior order and disqualifying Hook as counsel to Edwards, Day and wife in the civil litigation. As a threshold matter, the court ruled that the renewed motion was not an improper request for reconsideration because it sought disqualification "based on facts and circumstances which were not available to [Dina and Ronda] until after the court considered and ruled on their earlier disqualification motion." The court ruled that the renewed motion "will not be denied for lack of standing" because Hook represented Edwards/Day in the probate litigation against accusations they stole from the IRA while also having represented wife, who has a "potential community property interest" in the IRA, and because wife may

13

be a "key witness" in that litigation. The court reversed its prior ruling regarding the efficacy of the conflict waiver, reasoning now that the waiver was too heavily redacted to "know whether [it] anticipated and accounted for probate litigation where [wife's] and [Edwards'] interests would be directly adverse." The court went on to find in any event that there was a "direct and unwaivable conflict" because wife and Edwards/Day have "directly oppositional" interests in the conservatorship litigation vis-à-vis the funds in the IRA, and Hook "could use confidential information obtained during his representation of [wife] to benefit his client [Edwards] in ways that prejudice the [t]rust and Mohamed" by, for example, counseling wife to "act in ways that benefit [Edwards'] interests but harm [wife's] own interests (such as disavowing her community property interest)."

Edwards and Day (but not wife) appeal this disqualification ruling.

C.     *Consolidation of appeals*

We consolidated the appeals filed by Edwards and Day from the rulings disqualifying attorney Hook from representing them in the probate litigation and the civil litigation.

**DISCUSSION**

Edwards and Day argue that the probate court and the trial order erred in disqualifying Hook from representing them in the conservatorship litigation and the civil litigation, respectively. We generally review orders disqualifying counsel for abuse of discretion (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143 (*SpeeDee*); *City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 848 (*Cobra Solutions*)), but review de novo the threshold legal question of standing (*Great Lakes*

14

*Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1354 (*Great Lakes*); *Moreci v. Scaffold Solutions, Inc.* (2021) 70 Cal.App.5th 425, 435 (*Moreci*)) and review for substantial evidence the trial court's subsidiary factual findings (*SpeeDee*, at p. 1143; *Cobra Solutions*, at p. 848). (See generally, *Geringer v. Blue Rider Finance* (2023) 94 Cal.App.5th 813, 821 & fn. 4 (*Geringer*).)

## I.     Law Governing Disqualification of Counsel

Trial courts possess the power to disqualify counsel as part of their inherent and statutory authority to control the proceedings before them. (*SpeeDee*, *supra*, 20 Cal.4th at p. 1145; *Cobra Solutions*, *supra*, 38 Cal.4th at p. 846; *In re Charlisse C.* (2008) 45 Cal.4th 145, 159 (*Charlisse C.*); Code Civ. Proc., § 128, subd. (a)(5).) "Ultimately, disqualification . . . involve[s] a conflict between," on the one hand, "the clients' right to counsel of their choice" and, on the other, "the need to maintain ethical standards of professional responsibility" and "to preserve public trust in the scrupulous administration of justice and the integrity of the bar"—with the latter being the "paramount concern." (*SpeeDee*, at p. 1145.) Because "disqualification is a drastic course of action" (*Roush v. Seagate Technology, LLC* (2007) 150 Cal.App.4th 210, 219), it is to be exercised sparingly—not to "punish [a] lawyer's mistakes or even bad behavior," but instead as a "prophylactic" tool for preventing a lawyer from obtaining an unfair advantage from continued representation in the ongoing judicial proceedings. (*City of San Diego v. Superior Court* (2018) 30 Cal.App.5th 457, 470-472; *In re Marriage of Murchison* (2016) 245 Cal.App.4th 847, 852 (*Murchison*) [inherent authority to

15

disqualify exercised only where misconduct "'will have a continuing effect on the judicial proceedings'"].)

To blunt the "tactical abuse" and "strategic exploitation" of disqualification motions, anyone moving to disqualify counsel from representing a party in a matter must establish *both* a basis for disqualification[12] *and* standing to request disqualification.

---

**12** Although a lawyer's violation of the rules of professional conduct does not, by itself, "'necessarily compel disqualification'" (*Murchison*, *supra*, 245 Cal.App.4th at p. 853), two potential bases for disqualification are implicated by the probate and trial courts' rulings in this case. First, disqualification may be warranted, as a consequence of an attorney's duty of confidentiality, "[w]here an attorney successively represents clients with [potentially] adverse interests, and where the subjects of the two representations are substantially related." (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1146; *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283 (*Flatt*); *Charlisee C.*, *supra*, 45 Cal.4th at p. 159.) Second, disqualification may be warranted, as a consequence of an attorney's duty of loyalty, "where an attorney seeks to represent in a single action [and concurrently] multiple parties with potentially adverse interests." (*Charlisse C.*, at p. 159; *Flatt,* at pp. 284-285.) These two bases for disqualification exist only when the clients represented have "adverse interests": This standard is met only when the clients' interests are "hostile, opposed, antagonistic, . . . detrimental, [or] unfavorable" to one another (*Ames v. State Bar* (1973) 8 Cal.3d 910, 917), such as when the lawyer's duty to one client "requires" or "obligates" acting adversely to the other (*Coldren v. Hart, King & Coldren, Inc.* (2015) 239 Cal.App.4th 237, 248; *Havasu Lakeshore Investments, LLC v. Fleming* (2013) 217 Cal.App.4th 770, 778; *Beachcomber Management Crystal Cove, LLC v. Superior Court* (2017) 13 Cal.App.5th 1105, 1116); it is not enough to show an appearance of impropriety (*DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 832 (*DCH Health*); *Federal Home*

(*Great Lakes*, *supra*, 186 Cal.App.4th at p. 1356; *A.F. v. Jeffrey F.* (2022) 79 Cal.App.5th 737, 745 (*A.F.*).) A movant has standing if they have a "legally protected" or otherwise "sufficient" interest that would be adversely affected if the attorney at issue was not disqualified. (*Great Lakes*, at p. 1356, citing *Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 175.) Decisional law has identified four general situations in which a movant has the requisite "legally protected" interest to move for disqualification. Such an interest exists when:

-- There is or was an attorney-client relationship between the movant and the lawyer to be disqualified, typically because the movant is a current or former client. (*Moreci*, *supra*, 70 Cal.App.5th at p. 432; *Great Lakes*, *supra*, 186 Cal.App.4th at p. 1356; *Woods v. Superior Court* (1983) 149 Cal.App.3d 931, 934.)

-- The lawyer owes the movant a duty of confidentiality, even if that duty does not arise from a past or present attorney-client relationship. (*DCH Health*, *supra*, 95 Cal.App.4th at p. 832; *Great Lakes*, *supra*, 186 Cal.App.4th at p. 1356; *Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1205 (*Kennedy*); *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft* (1999) 69 Cal.App.4th 223, 227-230.)

---

*Loan Mortg. Corp. v. La Conchita Ranch Co.* (1998) 68 Cal.App.4th 856, 862) or that the clients have a "hypothetical" or "speculative" "possibility" of a "conflict" (*Walker v. Apple, Inc.* (2016) 4 Cal.App.5th 1098, 1110-1111; *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 302; *Bridgepoint Constr. Servs., Inc. v. Newton* (2018) 26 Cal.App.5th 966, 971; *Gong v. RFG Oil, Inc.* (2008) 166 Cal.App.4th 209, 215; *DCH Health*, at pp. 832-833).

17

-- The movant otherwise "establish[es] a 'personal stake' in the motion . . . that is sufficient to satisfy the standing requirements of Article III of the United States Constitution" (*Great Lakes*, *supra*, 186 Cal.App.4th at p. 1357, quoting *Colyer v. Smith* (C.D. Cal. 1999) 50 F.Supp.2d 966, 971; *Murchison*, *supra,* 245 Cal.App.4th at pp. 851-852; *A.F.*, *supra*, 79 Cal.App.5th at p. 746) because the movant would suffer "cognizable injury" if the attorney's representation continued  (*Kennedy*, *supra*, 201 Cal.App.4th at p. 1205).  (See also *Jarvis v. Jarvis* (2019) 33 Cal.App.5th 113, 132 [general partner in a partnership had a sufficient "personal stake" to move to disqualify a lawyer who was acting on the partnership's behalf but whom the general partner asserted did not have the authority to do so]; *Kennedy*, at p. 1205 [mother in a custody dispute had sufficient "personal stake" to move to disqualify the lawyer who was representing the father in the dispute, who would likely be a witness in that dispute (because the lawyer was the child's paternal grandfather), and who had represented the mother's relatives in an earlier lawsuit and thus obtained confidential information from mother].)

-- The lawyer's continued participation in the case "would undermine the integrity of the judicial process" because that participation would permit an "ethical breach" so "manifest and glaring" that it would "impact[] the mov[ant's] interest in a just and lawful determination of [the movant's] claims" (*Kennedy*, *supra*, 201 Cal.App.4th at pp. 1204-1205; *Conservatorship of Lee C.* (2017) 18 Cal.App.5th 1072, 1083; *Great Lakes*, *supra*, 184 Cal.App.4th at p. 1357), as established through "an adequate factual record" in that "particular case" rather than through "overarching statements of policy or conclusory allegations."

18

(*Geringer, supra,* 94 Cal.App.5th at p. 826; *In re Jasmine S.* (2007) 153 Cal.App.4th 835, 843-844; see *A.F., supra,* 79 Cal.App.5th at p. 746 ["assum[ing] without deciding" that standing exists where a father sought to disqualify the lawyer representing his child in a restraining order proceeding when that lawyer had represented the mother in a prior dissolution matter against the father and thus may have acquired confidential information].)

## II.    Analysis

We need not examine whether there is a basis to disqualify Hook as counsel in the probate or civil litigation because, as explained below, Dina and Ronda—in their capacities as conservators or trustees—did not have standing to move to disqualify Hook as counsel for Edwards/Day or for wife.

It is undisputed there was no attorney-client relationship running between Hook and the movants—whether we characterize the movants as Mohamed, his business, the trust, or Dina or Ronda as individuals.

It is also undisputed that Hook did not owe the movants— again, whether we characterize them as Mohamed, his business, the trust, or Dina or Ronda as individuals—any duty of confidentiality, as Hook has had no prior interaction or involvement with any of them prior to the probate and civil litigation at issue in this appeal.

The movants did not establish any personal stake in Hook's disqualification because they did not demonstrate how Hook's continued representation of Edwards and Day in the probate or civil litigation would cause cognizable injury to Mohamed, his business, the trust, or Dina or Ronda as individuals.  The probate court and trial court accepted the movants' assertion that

19

Edwards/Day and wife had necessarily adverse interests (and might use confidential information or act as witnesses for one another)—thereby precluding Hook from representing all of them—on the theory that the litigation effectively presents a "zero-sum game." Under this theory, Edwards' and Day's success in establishing that they did not wrongfully take money from the IRA (in the probate litigation) or from the investment account (in the civil litigation) means that the amount of money in Mohamed's trust or estate—in which wife would share—would necessarily be smaller. But this does not establish that the *movants* are thereby harmed by this potential conflict. If Edwards and Day prevail in their position (because wife corroborates their position that they had authorization to withdraw the money), then there may be less money for wife, but there would be no adverse interest between Edwards/Day on the one hand, and wife on the other. In this scenario, the movants would not suffer cognizable injury due to any alleged conflict *because there is no conflict.* Conversely, if Edwards and Day do not prevail in their position (because wife contests their position that they had authorization to withdraw the money), then there would be adverse interests between Edwards/Day and wife—but Mohamed's estate and the trust would prevail. In this scenario, the movants would not suffer cognizable injury due to the any alleged conflict *because, while there might be a conflict, the movants are not harmed by it* (*and, to the contrary, benefit from it*).

This case is therefore akin to the scenarios presented in *Great Lakes*, *supra*, 186 Cal.App.4th 1347 and *DCH Health*, *supra*, 95 Cal.App.4th 829. In *Great Lakes*, the movant (which was a construction company) and the homeowners sued each

20

other.  The movant also sued a subcontractor for breach of an indemnity clause.  The homeowners and subcontractor hired the same lawyer, and the movant sought to disqualify that lawyer on the theory that a win by the homeowner against the movant necessarily meant the subcontractor (who had to indemnify the homeowner) would lose.  (*Great Lakes*, at p. 1358.)  The court ruled that the movant did not have standing to seek disqualification because the "potential adversarial" relationship between the homeowners and the subcontractor was "of no concern to [the movant]."  (*Ibid.*)  In *DCH Health*, the movants were foundation officers who, along with the hospital foundation and hospital, sued a doctor for defamation.  The doctor was represented by an attorney whose wife served on the foundation's board.  The movants sought to disqualify the lawyer on the theory that the lawyer's wife would pass along confidential information to the doctor.  The court noted the potential confidentiality issue, but ruled that the movants did not have standing to raise an objection that belonged to the foundation.  (*DCH Health*, at p. 832.)  The same dynamic presented in *Great Lakes* and *DCH Health* is present here:  While Edwards/Day or wife would have standing to seek disqualification of Hook, Dina and Ronda—in any of their capacities—do not.

The movants lastly failed to demonstrate how, on the facts of this case, Hook's continued participation constituted an ethical breach so manifest and glaring as to impact Dina and Ronda's interest in a just and lawful determination of their claims.  Instead, the movants presented overarching statements of policy and conclusory allegations.  They point to *Kennedy*, *supra*, 201 Cal.App.4th 1197 as dictating a result in their favor, but it does not.  By its own terms, *Kennedy* entailed a situation where "[a]

21

plethora of family entanglements, potential misuse of confidential information, a conflict posed by the near-certain prospect that counsel will have to testify, and the preservation of the integrity of the judicial system all coalesce[d] to support" standing and disqualification. (*Id*. at p. 1200.) In that case, the movant was a mother who was in the midst of a custody dispute with the father. She moved to disqualify father's lawyer because that lawyer was the child's paternal grandfather, was likely to be a witness in the custody dispute, and had represented the mother's family members in a prior lawsuit where the lawyer likely acquired confidential information relevant to the custody dispute. (*Id*. at pp. 1197-1200.) Although *Kennedy* contains broad verbiage that could be read to confer standing based solely on the need to preserve the integrity of the judicial system, *Kennedy*'s ruling is tied to its facts and subsequent decisions have declined to de-couple *Kennedy*'s broad verbiage from its facts. (E.g., *Moreci, supra*, 70 Cal.App.5th at pp. 434-435 ["despite the broad language in *Kennedy* . . ., it was ultimately the attorney's possession of information the nonclient had shared confidentially, as well as the close relationship between the nonclient and the attorney's former client, that justified disqualification"]; *Acacia Patent Acquisition, LLC v. Superior Court* (2015) 234 Cal.App.4th 1091, 1100 [also noting that *Kennedy*'s "holding was tethered to messy interfamilial squabbles"].) The facts of this case are nothing like those in *Kennedy*.

Dina and Ronda respond with one further argument—namely, that Dina stands in Mohamed's shoes as his conservator and the trust's trustee. This is true, but does not aid in conferring standing because neither Mohamed nor the trust have

any "dog" in the proverbial fight that might arise between Edwards/Day and wife.

In light of our conclusion that Dina and Ronda lack standing to move for disqualification, we have no occasion to address whether there was any basis for disqualifying Hook. We also have no occasion to address Edwards'/Day's argument that the trial court procedurally erred in entertaining the renewed motion for disqualification in the civil litigation: If that motion was procedurally improper, the prior order in the civil litigation finding that Dina and Ronda lacked standing remains in force (and is correct); if that motion was procedurally proper, the subsequent order finding that Dina and Ronda had standing is procedurally valid but incorrect for the reasons we have stated.

## DISPOSITION

The orders are reversed. Edwards and Day are entitled to their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.

HOFFSTADT


We concur:

_____, J.

 KIM (D.)

_____, J.

 KUMAR\*

---

\*     Retired Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.